F. Prescott WARD, Petitioner,

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 92–3154.

United States Court of Appeals, Federal Circuit.

Dec. 4, 1992.

---

522

Peter B. Broida, Cohen, Broida & Associates, Arlington, VA, argued, for petitioner.

Joyce G. Friedman, Attorney, Merit Systems Protection Board, Washington, DC, argued, for respondent. With her on the brief were Mary L. Jennings, Acting General Counsel and Martha B. Schneider, Asst. General Counsel. Of counsel were David M. Cohen and James M. Kinsella, Dept. of Justice, Washington, DC.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The petitioner, Dr. F. Prescott Ward, filed an individual right of action appeal to the Merit Systems Protection Board (Board) pursuant to the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (1989), alleging that his agency's failure to appoint him to a higher grade position constituted a reprisal against him for his whistleblowing activities. On the government's motion, the Board dismissed the appeal for lack of jurisdiction, ruling that Dr. Ward's activities upon which he based his complaint did not constitute whistleblowing under the Act's definition of that term. We affirm.

## I

A. The underlying facts out of which this controversy arose are not in dispute. At the time of these events, Dr. Ward was a biological scientist with the Army Chemical Research, Development and Engineering Center (Center). Dr. Daphne Kamely then was employed at the Environmental Protection Agency. Dr. Richardson, the Center's technical director, in 1987 requested Dr. Kamely's opinion on a pilot project to construct a plant to manufacture biotechnology products, with which Dr. Ward was involved. Dr. Ward informed Dr. Richardson that the information Dr. Kamely had furnished him was incorrect. Dr. Ward believed that the alleged misinformation could have resulted in the project's termination, and, consequently, the waste of hundreds of thousands of dollars.

Subsequently, Dr. Kamely joined the Center as Scientific Advisor for Biotechnology. In that capacity, she was involved with organizing scientific presentations in Portugal and made various trips there. On one occasion, she planned to attend a meeting in Portugal with three others, including Dr. Ward and another Center scientist, Dr. DeFrank. Upon learning that Dr. Kamely had scheduled both him and Dr. DeFrank to speak on the same topic, Dr. Ward informed Dr. Kamely, by memorandum dated May 1, 1989, that he intended to urge the commanding general of the Center not to allow Dr. DeFrank to attend the meeting, since making two presentations on the same topic would not be "essential to the Army's mission."

Dr. Kamely subsequently was appointed as the Center's Director for Research and Laboratory Management. Dr. Ward applied for the scientific advisor position she had vacated. The agency selected another person for that post.

B. Contending that Dr. Kamely had intervened in the selection process to block his appointment, in reprisal for his two prior complaints against her, Dr. Ward filed a complaint with the Office of Special Counsel, pursuant to the Whistleblower Protection Act of 1989. That Act prohibits government personnel actions taken because of an employee's "disclosure of information ... which the employee ... reasonably believes evidences ... gross mismanagement, [or] a gross waste of funds," 5 U.S.C. § 2302(b)(8)(A)(ii) (Supp. III 1991); permits an employee affected by such action to seek corrective action by the Special Counsel, 5 U.S.C. § 1214(a)(3) (Supp. III 1991); and gives the employee, after he has unsuccessfully sought such corrective action, an individual right of action seeking corrective action from the Board. 5 U.S.C. § 1221(a) (Supp. III 1991).

Dr. Ward's complaint filed with the Office of Special Counsel alleged, among other charges, that his nonselection was the result of the two whistleblowing actions he took with respect to Dr. Kamely. The detailed complaint Dr. Ward filed with that office, under the caption "WHISTLEBLOWING," stated:

(1) In addition to the circumstances which were essentially beyond my control, there were other instances where I felt duty-bound to report what I believed to be mismanagement and/or waste of funds by Dr. Kamely. On one occasion, the Commanding General cancelled orders for her and three others to travel to Portugal for a conference. In fact he and the Acting Technical Director later

curtailed many of her proposed foreign trips. Apparently, because she believed BG Hidalgo respected my opinion, Dr. Kamely asked me to intercede personally on her behalf which I did. Later I learned of circumstances which strongly indicated to me that she misrepresented essential facts to me and BG Hidalgo, that some of the requested travel was not essential, and that for all four people to go to Portugal would constitute a waste of funds (TAB L). I told the CG of my concerns, and later Dr. Kamely restructured conference responsibilities and input.

(2) Another time I requested a meeting with Dr. Kamely to explain that a pilot project to develop industrial manufacturing capabilities for antibodies had absolutely nothing to do with a "Kit" as she kept calling it (TAB M). The Technical Director, Dr. B. Richardson, was on the verge of cancelling the "Kit" because he had been completely confused about the true purpose of the project. I met with him and told him that Dr. Kamely apparently did not understand the actual nature of the project. He renewed his support.

Attached to the complaint as Tab L was Dr. Ward's May 1, 1989 memorandum to Dr. Kamely, which dealt with Dr. Ward's view that sending Dr. DeFrank in addition to himself to address the meeting in Portugal was inappropriate and unnecessary.

The Special Counsel rejected Dr. Ward's complaint because "we have found insufficient evidence of any prohibited personnel practices or other violations warranting further inquiry by this Office." The Special Counsel explained:

Your 1987 complaint, that an official created confusion with a pilot project because she misunderstood the nature of the project, does not constitute a protected disclosure as defined in 5 U.S.C. § 2302(b)(8)(A). There is also some question as to whether your 1989 disclosure, that an official was scheduling unnecessary travel to foreign countries, constituted a gross waste of funds as also indicated in the statute. However, in the event that the latter complaint is construed to be a protected disclosure of information, you presented no evidence to indicate a connection between your disclosure and your nonselection. Further, according to your personnel office and as indicated above, the official named in your disclosure had no involvement in the selection process of the Scientific Advisor position. Thus, since we found no evidence which indicated a connection between your disclosure and the agency's decision not to select you, since it appears that the individual named in your disclosure had no involvement in the selection process of the position, and since there is some question as to whether your complaint constituted a disclosure within the meaning of the statute, we would be unable to establish before the Merit Systems Protection Board that your whistleblowing activity was a contributing factor in the decision not to select you for the position of Scientific Advisor for Biotechnology. Consequently, we found no basis for further inquiry into this allegation as a possible violation of 5 U.S.C. § 2302(b)(8).

C. Dr. Ward appealed the Special Counsel's dismissal of his complaint to the Board. In response to the Army's motion to dismiss, the Board, acting through an administrative judge, dismissed the complaint for lack of jurisdiction.

The administrative judge ruled that Dr. Ward's allegations that Dr. Kamely ignored relevant travel procurement regulations and personally engaged in unnecessary travel could not be raised before him because Dr. Ward had not brought those allegations before the Special Counsel. As to the other issues before him, the administrative judge first rejected the complaint of Dr. Kamely's "gross mismanagement" because Dr. Ward had "not identified any managerial duties or responsibilities concerning this project that [Kamely] failed to carry out ... [and] the offering of an erroneous scientific recommendation or opinion is simply not ... mismanagement...." Second, the administrative judge rejected the complaint relating to unnecessary travel because even "[a]ssuming that De-

Frank's travel was not necessary and that [Dr. Ward's] memorandum therefore reasonably questioned the wisdom of sending both him and DeFrank to the conference in Europe, the travel costs for one individual do not evidence the gross waste of funds contemplated by § 2303(b)(8)."

## II.

The Whistleblower Protection Act of 1989 prohibits the taking or failing to take a personnel action with respect to an employee because of

> any disclosure of information by an employee ... which the employee ... reasonably believes evidences ... gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8)(A)(ii) (Supp. III 1991).

In his complaint to the Office of Special Counsel, Dr. Ward contended that the Center's nonselection of him for the position of Scientific Advisor for Biotechnology violated this provision because it was done in retaliation for his disclosure of alleged gross mismanagement involving Dr. Kamely's advice regarding the pilot plant project and her alleged gross waste of funds relating to travel to Portugal. Dr. Ward argues that his allegations were sufficient to establish that the Board had jurisdiction over his complaint of whistleblowing, and that he was entitled to a hearing on those allegations before the Board could dismiss the complaint.

■ We hold, however, that the Board correctly ruled, as a matter of law, that Dr. Ward's complaint to the Board did not allege "whistleblowing" as the Whistleblower Protection Act defines that term. Although the Civil Service Reform Act gives an employee the right to a hearing "from any action which is appealable to the Board under any law, rule, or regulation," 5 U.S.C. § 7701(a)(1) (1988), the Board is not required to conduct a hearing where the complaint does not allege a valid charge of whistleblowing within the Board's jurisdiction. *See Manning v. Merit Sys. Protection Bd.*, 742 F.2d 1424, 1426, 1428 (Fed. Cir.1984) (approving Board finding that

"petitioner has a right to a hearing only in those actions over which the MSPB has jurisdiction"); *Lozada v. Equal Employment Opportunity Comm'n*, 45 M.S.P.R. 310, 313 (1990) ("[S]ince the appellant failed to raise a nonfrivolous allegation of jurisdiction, the administrative judge properly denied her request for a hearing."); *cf. Knollenberg v. Merit Sys. Protection Bd.*, 953 F.2d 623 (Fed.Cir.1992) (employee had no right to appeal an allegedly retaliatory transfer since it occurred prior to the Whistleblower Protection Act's effective date and was, thus, outside the Board's jurisdiction).

■ A. Dr. Ward's first charge of whistleblowing related to the allegedly incorrect information Dr. Kamely, then an employee of the Environmental Protection Agency, gave to Dr. Richardson, the Center's Technical Director, about a pilot plant project with which Dr. Ward was involved. At that time and in that capacity, Dr. Kamely was not a part of the "management" of the Center. Dr. Ward's complaint to Dr. Kamely and his statement to Dr. Richardson that Dr. Kamely misunderstood the nature of the project cannot properly be construed as an allegation that he had a reasonable belief of gross mismanagement. As the administrative judge stated:

> the offering of an erroneous scientific recommendation or opinion is simply not shown to constitute mismanagement, let alone the gross mismanagement required by 5 U.S.C. § 2302(b)(8). Accepting as true all that appellant alleges concerning this incident, I find that his complaint about the accuracy of the information and recommendation provided by Dr. Kamely does not constitute protected whistleblowing.

In a "certification in reply to motion to dismiss" that Dr. Ward filed with the Board, he stated that by pointing out the alleged errors in Dr. Kamely's advice to Dr. Richardson, he "prevented a gross waste of funds, several hundred thousand dollars, which would have been spent for naught because of the erroneous informa-

tion Dr. Kamely provided Dr. Richardson," which would have resulted if Dr. Richardson, in reliance on that advice, had cancelled the project. That claim of "gross waste," however, was not the charge of whistleblowing that Dr. Ward made to the Special Counsel: he asserted only "gross mismanagement" which, as we have held, his allegations did not show.

■ The basis for determining the nature of Dr. Ward's charges of whistleblowing to the Special Counsel are the statements Dr. Ward made in his complaint to that official, not his subsequent characterization of those statements in his appeal to the Board. As we discuss in Part II.B., below, Dr. Ward's failure to raise before the Special Counsel the gross waste issue concerning Dr. Kamely's advice to Dr. Richardson, precluded him from raising that point before the Board.

■ B. 1. The only issue the administrative judge decided with respect to travel was whether Dr. Kamely's authorization of Dr. DeFrank's trip to address a meeting in Portugal constituted gross waste of funds. The administrative judge refused to consider Dr. Ward's additional charge that "Dr. Kamely herself was taking excessive and unnecessary overseas trips," because under 5 U.S.C. § 1214(a)(3), Dr. Ward's failure to raise that issue in his complaint to the Special Counsel precluded the Board from considering it and the charge "therefore cannot serve as a basis for Board jurisdiction over appellant's appeal." That section states that, with an exception here inapplicable, an employee "shall seek corrective action from the Special Counsel before seeking corrective action from the Board." 5 U.S.C. § 1214(a)(3) (Supp. III 1991).

Dr. Ward, relying primarily on his certifications filed with the Board, contends that the administrative judge construed his complaint to the Special Counsel too narrowly, and should have viewed it as also challenging Dr. Kamely's own allegedly unnecessary travel. As we have indicated in Part II.A, however, Dr. Ward's subsequent certifications to the Board concerning what he stated in his complaint to the Special Counsel are not a proper basis for interpreting his complaint.

In any event, the administrative judge justifiably refused to consider an issue that Dr. Ward had not properly raised before the Special Counsel. See *Knollenberg v. Department of Navy*, 47 M.S.P.R. 92, 97 (1991) ("[S]ince the appellant failed to first raise the [whistleblowing] allegation to OSC which he now seeks to appeal to the Board, his appeal must be dismissed for lack of jurisdiction."), *aff'd sub nom. Knollenberg v. Merit Sys. Protection Bd.*, 953 F.2d 623 (Fed.Cir.1992); *Shillinger v. Department of Labor*, 47 M.S.P.R. 145, 151 (1991). The purpose of the requirement that an employee exhaust his or her remedies before the Special Counsel before appealing to the Board is to give the Special Counsel the opportunity to take corrective action before involving the Board in the case. The Whistleblower Protection Act provides that, if the Special Counsel determines that there is a substantial likelihood that the information he has received discloses a violation of the Act, he shall transmit the information to the head of the agency involved for investigation and report by the latter. 5 U.S.C. § 1213(c) (Supp. III 1991). Such inquiries by the Special Counsel and transmittal to the agency for remedial action constitute a major portion of the work of the Special Counsel. *A Report to Congress from the U.S. Office of Special Counsel Fiscal Year 1991*, Office of Special Counsel, at 16–17.

■ For the exhaustion remedy to serve its intended purpose, however, the employee must inform the Special Counsel of the precise ground of his charge of whistleblowing. He must "give the Office of Special Counsel sufficient basis to pursue an investigation which might have led to corrective action." *Knollenberg*, 953 F.2d at 626. An allegation of a specific alleged travel impropriety—here Dr. Kamely's authorization of Dr. DeFrank's trip to Portugal—was not sufficient notice to the Special Counsel that Dr. Ward also was challenging other travel related activities of Dr. Kamely.

2. Dr. Ward's memorandum of May 1, 1989 to Dr. Kamely, which was the sole ground he raised before the Special Counsel that Dr. Kamely's travel related activities involved a gross waste of funds, indicated that Dr. Kamely originally had proposed that Dr. Ward present a paper for thirty minutes at the conference in Portugal; that Dr. Ward had prepared such a talk "to occupy 30 minutes, not 15"; and that Dr. Ward then learned that Dr. De-Frank also would make a talk at the meeting "on the same topic." The memo concluded that "[i]f indeed DeFrank might talk on the same topic (if you can fit him, I presume), then his travel is certainly not essential to the Army's mission."

The decision whether to send two scientists to address a scientific meeting, even on the same topic, was a matter within the discretion of the Director for Research and Laboratory Management, Dr. Kamely. She properly could have concluded that two presentations on even the same topic would be desirable to present different views on the subject. Dr. Ward, himself a scientist, presumably was aware of this. He could not reasonably have believed the travel to permit different perspectives on the same scientific topic constituted a "waste of funds." The Board therefore properly concluded that Dr. Ward's allegations relating to Dr. Kamely's authorization of Dr. De-Frank's travel to Portugal did not constitute whistleblowing under 5 U.S.C. § 2302(b)(8)(A)(ii) (Supp. III 1991).

3. Dr. Ward contends, however, that under *Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), this court may affirm the Board only upon the ground of the Board's decision. *Chenery* made broad statements with respect to the basis of judicial review of an administrative decision. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Id.* at 87, 63 S.Ct. at 459. "[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were

those upon which its action can be sustained." *Id.* at 95, 63 S.Ct. at 462.

Those statements, however, must be read in the light of the issue before the Court. In a reorganization under the Public Utility Holding Company Act of 1935, the Securities and Exchange Commission had limited the participation of the corporate managers who had traded in the company's stock during the reorganization to the amount they paid for the stock. The Commission's rationale was that such trading violated the managers' fiduciary obligations to the company's other stockholders. The Supreme Court held that this theory of the Commission was not supported by the case authorities upon which the Commission relied.

The Commission also sought to justify its decision on the alternative ground that permitting the managers to profit from their stock trading would violate the Act's "detrimental to the public interest or the interest of investors or consumers" and "fair and equitable" standards. The Supreme Court refused to permit the Commission to do so, because "the considerations urged here in support of the Commission's order were not those upon which its action was based." *Id.* at 92, 63 S.Ct. at 461. It was in that context that the Supreme Court made the broad statements quoted above.

Thus, in *Chenery*, the agency attempted to justify its decision on an entirely different ground from the one it gave in its opinion, and the Supreme Court ruled that it could not affirm the agency on that basis.

In this case, however, we affirm the Board not on a wholly different theory, but upon a narrower application of the agency's interpretation of the statute. The agency held that because travel by a single individual cannot constitute a "gross waste of funds," Dr. Ward had not stated a whistleblowing claim within the Board's jurisdiction. We uphold the latter ruling on the ground that in all the circumstances Dr. Ward could not reasonably have believed that Dr. Kamely's authorization of Dr. De-Frank's trip to Portugal constituted a "gross waste of funds" under the whistleblowing statute.

The Board thus applied a general rule dealing with travel by an individual, whereas our decision deals with particular travel by a particular individual. Since here "it is clear that ... the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming." *Salt River Project Agric. Improvement & Power Dist. v. United States*, 762 F.2d 1053, 1061, n. 8 (D.C.Cir.1985). *Chenery* does not preclude such an affirmance. *Cf. National R.R. Passenger Corp. v. Boston & Me. Corp.*, — U.S. —, —, 112 S.Ct. 1394, 1403, 118 L.Ed.2d 52 (1992); *Time, Inc. v. United States Postal Serv.*, 667 F.2d 329, 334–35 (2d Cir.1981).

In so holding, we do not suggest that a single individual's travel costs never could evidence a "gross waste of funds" under § 2302(b)(8). The determination whether an employee reasonably could believe that the expenditure of travel funds constitutes gross waste turns on the facts of the particular case. There may be situations in which a single individual's travel could amount to gross waste of funds—an issue we need not here address. In this case we hold only that, based on the allegations in Dr. Ward's complaint to the Special Counsel, Dr. Ward could not reasonably have believed that, in all the circumstances, the cost of Dr. DeFrank's travel to address the meeting in Portugal constituted a gross waste of funds.

### CONCLUSION

The order of the Merit Systems Protection Board dismissing Dr. Ward's appeal for lack of jurisdiction is

AFFIRMED.