**Richard D. HERMAN, Petitioner,**

v.

**DEPARTMENT OF JUSTICE, Respondent.**

**No. 99–3117.**

United States Court of Appeals, Federal Circuit.

. Oct. 25, 1999.

R. John Westberry, of Pensacola, Florida, for petitioner.

Michael L. Tingle, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Jr., Assistant Director.

Before MICHEL, SCHALL, Circuit Judges, and SMITH, Senior Circuit Judge,

MICHEL, Circuit Judge.

The Petitioner, Dr. Richard Herman, filed an Individual Right of Action ("IRA") appeal to the Merit Systems Protection Board ("Board" or "MSPB"), alleging that he was reassigned in retaliation for whistleblowing activities. *See* MSPB Docket No. AT–1221–98–329–W–1. On the government's motion, the Board dismissed the appeal for lack of jurisdiction, ruling that none of the disclosures upon which Dr. Herman based his complaint was a protected disclosure under the Whistleblower Protection Act ("WPA"). *See* 5 U.S.C. § 2302(b)(8)(A) (1994) (protecting an employee from adverse personnel actions taken in retaliation for disclosing information that the employee reasonably believes evidences "a violation of law, rule, or regulation," or "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety"). Because both the specific language in the Act and our case law interpreting the Act support the Board's conclusion, we affirm.

## BACKGROUND

In September 1997, Dr. Herman was laterally reassigned from the position of Chief Clinical Psychologist, GM–13, at the Federal Prison Camp, Eglin Air Force Base, Florida, to that of Staff Clinical Psychologist, GM–13, at the Federal Correctional Complex, Coleman, Florida. Dr. Herman filed a complaint about his reassignment with the United States Office of Special Counsel ("OSC"). The OSC terminated its investigation without taking corrective action. Dr. Herman timely appealed to the MSPB.

Before the MSPB, Dr. Herman alleged that his reassignment to a new facility was a "prohibited personnel action" which was taken in retaliation for two separate whistleblowing disclosures. Dr. Herman contended that the first disclosure was a memorandum given in July 1997 to the associate warden at the prison camp urging the warden to either formalize an agreement with the Base hospital for use of its facilities in the event there is a suicidal inmate or create a suicide watch room at the prison camp. Before the Board, Dr. Herman asserted that the memorandum indicated that failure to have a formal written agreement with the hospital, or have a suicide watch room at the camp itself, potentially posed a substantial and specific danger to the public health and safety within the meaning of the WPA and violated the U.S. Department of Justice/Federal Bureau of Prisons Suicide Prevention Program ("SPP") Directive P.S. 5324.03.

Dr. Herman contended that the second disclosure was a statement he made in June 1997, by telephone to the national Employee Assistance Program ("EAP") Coordinator in Washington, DC, and in writing to the associate warden that EAP Directives requiring confidentiality of counseling information may have been violated when his department's telephone log was copied during an investigation of his conduct by prison officials. The EAP provision, Directive P.S. 3792, states that the "confidential nature of EAP *counseling information* of all employees referred for assistance shall be preserved with the same enhanced level of confidentiality as counseling records of employees with alcohol and drug abuse problems." (emphasis added). Dr. Herman contended that the copying of the telephone log during an investigation of Dr. Herman's alleged un-

authorized use of the telephone could have been a violation of Directive P.S. 3792 and of other federal laws and regulations.

The Administrative Judge ("AJ") conducted a pre-hearing conference in which she questioned whether the disclosures qualified as protected disclosures under the WPA and ordered Dr. Herman to submit evidence and argument that his disclosures met any of the criteria set forth in 5 U.S.C. § 2302(b)(8). Following receipt of the parties' written responses, the AJ concluded that Dr. Herman did not establish that a reasonable person in Dr. Herman's position would believe that the disclosures were protected disclosures under the WPA and dismissed Dr. Herman's IRA appeal without an evidentiary hearing for lack of jurisdiction.

Dr. Herman petitioned the full MSPB for review of the Board's initial decision. The MSPB denied the petition reasoning that it did not meet the criteria for review set forth at 5 C.F.R. § 1201.115 (1999). The initial decision thus became the final decision of the Board.

On timely appeal to this court, Dr. Herman contends that the Board reversibly erred, first, in finding that a reasonable person in his position would not believe that Dr. Herman's memorandum concerning the suicide watch room disclosed a substantial and specific danger to public health or safety or disclosed a violation of the SPP Directive, and second, in finding that a reasonable person would not believe that Dr. Herman's disclosure concerning the photocopying of the telephone log constituted a disclosure of a violation of the EAP Directive.

We have jurisdiction under 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

■■■ The Board's jurisdiction is not plenary, but is limited to adverse personnel actions expressly made appealable to it by law, rule, or regulation. *See* 5 U.S.C. § 7701(a) (1994); *Middleton v. Department of Defense*, 185 F.3d 1374, 1379 (Fed. Cir.1999). The burden of showing juris-

diction is on the petitioner. *See* 5 C.F.R. § 1201.56(a)(2)(i) (1999). Whether the Board has jurisdiction to adjudicate a particular appeal is a question of law, which we review *de novo*. *See Middleton*, 185 F.3d at 1374, 1379.

In order for the Board to have jurisdiction over an IRA appeal under the WPA, one of the things that a petitioner must show, by a preponderance of the evidence, is that he engaged in whistleblower activity by making a disclosure protected under the WPA, i.e., he disclosed information that he *reasonably believed* evidenced "a violation of law, rule, or regulation," 5 U.S.C. § 2302(b)(8)(A)(i), or "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety," 5 U.S.C. § 2302(b)(8)(A)(ii). *Willis v. Department of Agriculture*, 141 F.3d 1139, 1142–43 (Fed.Cir.1998).

### Dr. Herman's First Disclosure:

In the memorandum provided to the associate warden, Dr. Herman noted that the camp does not have a suicide watch room but does have an informal agreement with the Base hospital to utilize its facilities in the event the camp has a suicidal inmate. The memorandum goes on to state that to be "in complete compliance with the suicide watch room requirements," the camp should have "a formal written agreement with the hospital or look at making a new suicide watch room at the camp."

■■■ Dr. Herman contends, on appeal, that a reasonable interpretation of the memorandum was to report a substantial and specific danger to that portion of the inmate population that was potentially suicidal, if the hospital's facilities were not available when needed due to, what he termed, "the vagaries of the informal agreement." Specifically, Dr. Herman contends that, given his position as Program Coordinator of the SPP, responsible for the day-to-day supervision of the program, he reasonably believed that he disclosed a situation that posed a substantial

and specific danger to public health and safety. Second, he contends that the memo reported a violation of the Directive pertaining to the SPP.

■ We must disagree. The legislative history of the initial whistleblower provisions, originally passed as part of the Civil Service Reform Act ("CSRA"), Pub.L. No. 95–454 (Oct. 13, 1978), now codified in various portions of Title 5 of the United States Code, indicates that the Act was not intended to apply to disclosure of trivial or *de minimis* matters. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2730 (indicating that the Act is needed as a means to protect, for example, the "pentagon employee who discloses billions of dollars in cost overruns, the GSA employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain nuclear plants"). The plain language of the statute requires that the disclosure relate to a "substantial and specific danger to public health or safety." The legislative history explains that:

> the Committee intends that only disclosures of *public health or safety dangers* which are both *substantial and specific* are to be protected. Thus, for example, general criticisms by an employee of the Environmental Protection Agency that the agency is not doing enough to protect the environment would not be protected under this subsection. However, an allegation by a nuclear regulatory commission engineer that the cooling system of a nuclear reactor is inadequate would fall within the whistle blower protections.

S.Rep. No. 969, 95th Cong., 2d Sess. 8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2730 (emphasis added).

We agree with the Board that Dr. Herman's memorandum, discussing the ab-

sence of a formal agreement between the hospital and the prison camp, did not disclose a "substantial and specific danger to public safety" that, according to legislative intent, warrants protection under the WPA. The Board noted that the prison camp does have a designated suicide prevention room which is located at the Base hospital and that the room was accessible to the prison pursuant to an informal agreement with the Base hospital. The Board further noted that Dr. Herman did not challenge the adequacy of the arrangements at the room itself or take issue with the substance of the agreement with the hospital. He simply took issue with the informal nature of the agreement. The AJ also noted that Dr. Herman's own words, speculating that there may be a danger "if someone 'dropped the ball' because of the vagaries of an informal agreement," demonstrate that his concern about the danger was neither substantial nor specific. Thus, Dr. Herman has failed to allege facts to demonstrate a reasonable belief that the location of the suicide watch room or the informal agreement between the hospital and the prison camp presents a "substantial and specific danger" that, according to legislative intent, warrants protection under the WPA.

Further, at the time Dr. Herman made his statement about the suicide watch room, the prison camp had not placed an inmate on suicide watch in at least three years. Dr. Herman has failed to identify any prison inmates, or any other members of the public, needing access to a suicide watch room, or even that there is a specific and substantial likelihood that there will be individuals in the future needing access to the suicide watch room.

We also agree with the Board's conclusion that a reasonable person would not believe that the situation violated the SPP Directive.[1] According to Dr. Herman, the

---

1. Dr. Herman has not provided any evidence to establish that the SPP Directive constitutes a law, rule, or regulation under section 2302(b)(8)(A). However, for the purposes of this appeal only, we will assume that the SPP Directive is a rule. *See* 5 U.S.C. § 551(4)

(1994) (defining a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . .").

SPP Directive requires that the institution have a designated suicide prevention room for inmates who are placed on suicide watch. However, the prison camp did have a designated suicide prevention room, namely, the room that is located at the Base hospital, and that is available to the prison camp pursuant to an informal agreement with the Base hospital. There is nothing in the Directive that prohibits the prison camp's informal arrangement for a nearby, but off-site, suicide watch room. Indeed, the Board found that the Directive even contemplates the possibility that the room will be located off-site. The Board noted that the Directive states that while the institution's designated suicide prevention room is *ordinarily* located in the health services area, the Directive expressly provides that the suicide watch room may be placed in a "different area," given the unique features of some institutions. Thus, Dr. Herman has failed to provide sufficient evidence to establish that a reasonable person would conclude that the memorandum disclosed any violation of the SPP Directive. Accordingly, we agree with the AJ that Dr. Herman has failed to carry his burden of proof by preponderant evidence.

### *Dr. Herman's Second Disclosure:*

■ Dr. Herman also contends that the Board erred in finding that a reasonable person would not believe that Dr. Herman's second disclosure, concerning a possible compromise of EAP confidentiality, constituted a protected disclosure of a violation of the EAP Directive P.S. 3792, at most a "rule," or other laws and regulations.[2] According to Dr. Herman, the Directive requires that the "counseling information of all employees referred for assistance" shall be kept confidential and that the confidentiality of the counseling information may have been violated when telephone logs in his office were copied.

However, the Board found that not every piece of information in an EAP office is "counseling information," which needs to be kept confidential. The Board further found that Dr. Herman did not establish that a reasonable person as manager of the EAP would have believed that the logs or telephone messages that were copied were protected under the Directive. Given the fact that Dr. Herman has not provided any evidence that any of the information that was copied was confidential or even that any of the messages that were in the telephone log were related to the EAP, we cannot say that the Board erred in holding that Dr. Herman could not have reasonably believed that he disclosed information evidencing a violation of any law, rule, or regulation.

Dr. Herman further argues that the AJ erred when she based her ruling that no person could have reasonably believed that there was a violation of a law, rule, or regulation on her own view of the lack of seriousness of the reported wrongdoing. Dr. Herman contends that under *Horton v. Department of the Navy*, 66 F.3d 279 (Fed.Cir.1995), "whether or not the reported violations were trivial ... does not deprive the discloser of the benefit of having made a protected disclosure," *id.* at 283, and that an evidentiary hearing on jurisdiction is needed to evaluate Dr. Herman's credibility.

We disagree. The AJ based her decision on the fact that Dr. Herman had not provided any evidence whatsoever that any confidential "counseling information" was copied. Thus, there simply was no violation. The AJ therefore correctly held that Dr. Herman's memorandum expressing his concern about the possible effect that copying the telephone logs may have on the integrity and the confidentiality of the program is not a protected disclosure.

Further, we reject Dr. Herman's contention that *Horton* mandates that the disclo-

---

**2.** Dr. Herman alleges that the confidentiality of the EAP is protected by federal law and regulations. As Dr. Herman does not specifi-

cally identify which federal laws and regulations are involved, however, we will not consider this issue.

sure of a single violation, even if trivial, necessarily constitutes a protected disclosure. In *Horton,* the whistleblower did not allege a single violation, but rather reported multiple instances of alleged wrongdoing, including allegations that employees falsified time cards, were frequently sleeping on the job, and misused the telephone. Indeed, we criticized the Board's conclusion that a "single incident [of making a personal phone call] could not reasonably be viewed as wrongdoing" by noting that the disclosure did not relate to a single incident, but rather to a "practice of excessive personal calls during work periods." *Horton,* 66 F.3d at 283. Because *Horton* did not decide whether a single violation can suffice, it is not controlling in this case.

■ As we noted in *Frederick v. Department of Justice,* 73 F.3d 349, 353 (Fed. Cir.1996), the WPA was enacted to protect employees who report genuine violations of law, not to encourage employees to report minor or inadvertent miscues occurring in the conscientious carrying out of a federal official or employee's assigned duties.

> If supervisors have to fear that every trivial lapse in their own behavior will be the subject of a whistleblowing complaint when they critically appraise their employees, as they are obligated to do, they will be deterred from carrying out honest appraisals. Poor performers will be protected by any minor lapse in a supervisor's conduct. This was not the purpose of the WPA, which merely was intended to root out real wrongdoing.

*Id.*

In *Frederick,* for example, the alleged whistleblower claimed that he had disclosed a violation of law by reporting that a United States Border Patrol agent violated international law by crossing the border into Mexico without Mexican permission. In evaluating the reasonableness of the whistleblower's purported belief, we stated that "the alleged action [of the Border Patrol agent] was of such a . trivial nature that [the 'whistleblower'] could not have had a reasonable belief that [the Bor-

der Patrol agent] was violating a law, rule, or regulation within the meaning of the WPA." *Id.* Indeed, the Border Patrol agent testified that in fact the exact location of the border was unclear and that he believed he never crossed into Mexico but always remained on United States soil.

Here, the EAP Directive requires that all EAP confidential "counseling information" and records thereof be kept in a security-approved container, such as a safe. The agency made copies of the telephone log in order to investigate possible wrongdoing by Dr. Herman. The telephone log was not kept in a security-approved container but appeared to have been left out in the open. Given the fact that confidential information should have been kept in a security container, that the telephone log was not kept in such a container, that copying of confidential information, if any, would have been inadvertent, and that Dr. Herman could not identify any confidential information as actually being copied, the action by the agency was of such a trivial nature that Dr. Herman could not have reasonably believed that the agency was violating a law, rule, or regulation within the meaning of the WPA when the agency made copies of his telephone log. Moreover, the unreasonableness of his belief is further established by the fact that the copying he complained about was pursuant to an investigation of improper conduct on his part.

■ Of course, we do not suggest that the disclosure of a single violation of a law, rule, or regulation could never constitute a protected disclosure. There may be situations in which the disclosure of even a single violation can amount to a protected disclosure. Similarly, a report of repetitive violations of even minor rules or regulations can constitute a protected disclosure. *See Eidmann v. Merit Sys. Protection Bd.,* 976 F.2d 1400, .1402–03, 1407 (Fed.Cir.1992) (affirming the Board's finding that a whistleblower's disclosure of an agency's *repeated* refusal to enforce regulations banning smoking in general of-

fice areas was a protected disclosure under the WPA). The determination of whether an employee has a reasonable belief that a law, rule, or regulation was violated turns on the facts of the particular case. In this case, we hold that Dr. Herman could not have reasonably believed that his memorandum concerning the photocopying of telephone logs constituted the disclosure of a violation of a nontrivial law, rule, or regulation.

### Entitlement to an Evidentiary Hearing:

 In order to be entitled to a hearing on jurisdiction, Dr. Herman must present a nonfrivolous allegation that the Board has jurisdiction over his appeal. A nonfrivolous allegation of Board jurisdiction is an allegation which, if proven, could establish a *prima facie* case that the Board has jurisdiction over the matter at issue. *See Ward v. Merit Sys. Protection Bd.*, 981 F.2d 521, 525 (Fed.Cir.1992) (holding that the Board is not required to conduct a hearing where the complaint does not allege a valid charge of whistleblowing within the Board's jurisdiction).

In *Ward,* we held that the petitioner's allegations regarding a disclosure of mismanagement were not sufficient to entitle the petitioner to a hearing on jurisdiction. There, the purported protected disclosure was a statement that a supervisor "mis-understood the nature of a project." We held that this allegation could not be construed as a reasonable belief of gross mismanagement and thus the Board was correct in ruling that the petitioner's complaint to the Board did not allege sufficient facts to establish "whistleblowing" as the WPA defined that term. *See id.*

Here, Dr. Herman has not alleged facts sufficient to support a *prima facie* case of jurisdiction. In order for the Board to have jurisdiction, Dr. Herman must allege facts that, if proven, would establish that he was subject to an adverse personnel action because he made a protected disclosure, that is, information which he reasonably believed evidenced a violation of law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. *See* 5 U.S.C. § 2302(b)(8)(A). As stated above, even accepting as true all that Dr. Herman alleges, none of Dr. Herman's disclosures were protected disclosures under the WPA.

Accordingly, the decision of the Board is

*AFFIRMED.*