**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| EDWARD HAMEL,<br>　　　　　Appellant, | DOCKET NUMBER<br>DE-1221-16-0046-W-1 |
| 　　　v. | |
| DEPARTMENT OF HOMELAND<br>　SECURITY,<br>　　　　　Agency. | DATE: January 31, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Jeffrey H. Jacobson, Esquire, Tucson, Arizona, for the appellant.

John B. Barkley, Esquire, Phoenix, Arizona, for the agency.

Jaime Diaz, El Paso, Texas, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## REMAND ORDER

¶1 The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review and REMAND the case to the Board's field office for further adjudication in accordance with this Remand Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The instant decision involves the appellant's IRA appeal. Initial Appeal File (IAF), Tab 1. In it, he alleged that he made protected disclosures and engaged in protected activities concerning Operation Fast & Furious—a joint investigation between his agency and the Department of Justice's (DOJ) Bureau of Alcohol, Tobacco, and Firearms. IAF, Tab 13 at 14-16. He further alleged that these disclosures and protected activity were a contributing factor in his 2013 placement on administrative duties as well as his 2013 and 2014 performance appraisals. *Id.* at 16-19. The appellant filed a separate adverse action appeal of his September 26, 2014 removal. *Hamel v. Department of Homeland Security*, MSPB Docket No. DE-0752-15-0039-I-1, Initial Appeal File, Tab 1 at 4; *Hamel v. Department of Homeland Security*, MSPB Docket No. DE-0752-15-0039-I-2, Appeal File (0039 AF-2), Tab 47, Initial Decision (0039 ID).[2]

¶3 Without holding the requested hearing, the administrative judge issued an initial decision that dismissed the IRA appeal for lack of jurisdiction. IAF, Tab 19, Initial Decision (ID). She found that the appellant failed to prove that he exhausted his reprisal claim before the Office of Special Counsel (OSC). ID at 3-5. The appellant has filed a petition for review. Petition for Review (PFR)

---

[2] We have separately issued a decision denying the appellant's petition for review of the initial decision that affirmed his removal. *Hamel v. Department of Homeland Security*, MSPB Docket No. DE-0752-15-0039-I-2, Final Order (Jan. 26, 2023).

File, Tab 1. The agency has filed a response and the appellant replied. PFR File, Tabs 5-6.

¶4      On review, the appellant argues that the administrative judge erred in finding that he failed to prove exhaustion with OSC and, therefore, dismissing his IRA appeal for lack of jurisdiction. PFR File, Tab 1 at 6-17. As further detailed below, we agree.

The appellant proved that he exhausted his claims with OSC.

¶5      The Board has jurisdiction over an IRA appeal if an appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. §§ 1214(a)(3), 1221(a), (e); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). An appellant must prove exhaustion with OSC, not merely present nonfrivolous allegations of exhaustion. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 9 (2011).

¶6      The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that previously have been raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. Appellants may demonstrate exhaustion through their initial OSC complaint, evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and their written responses to OSC referencing the amended allegations. Appellants also may establish exhaustion through other sufficiently

reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.*

¶7 Here, the appellant's OSC complaint first alleged that he was assigned to Operation Fast & Furious in October 2009, he believed that the associated case methodologies were flawed, and he brought those concerns to the attention of senior management within the agency's Homeland Security Investigations (HSI). IAF, Tab 13 at 29. He described this as raising "specific concerns about the danger of the operation to the general public." *Id.* at 34.

¶8 Second, the appellant alleged that a Border Patrol Agent was murdered in December 2010, and an investigation ensued. *Id.* at 29-30. According to the appellant, the agency sent a management team from its headquarters to conduct interviews, in early 2012, about how HSI was involved in the operation. *Id.* at 30. He further alleged that, after each day of interviews, the HSI Assistant Special Agent in Charge (ASAC) grilled the appellant about his interview and reported back to the HSI Special Agent in Charge (SAC). *Id.*

¶9 Third, the appellant alleged that the office of Senator Charles Grassley also interviewed him about Operation Fast & Furious. *Id.* According to the appellant, the HSI SAC insisted on and did sit in on this interview. *Id.* In his pleadings, the appellant has alleged that the interview occurred in 2012. *Id.* at 9.

¶10 Fourth, the appellant alleged that he participated in interviews with the DOJ Office of Inspector General (OIG) in 2011 and the Department of Homeland Security (DHS) OIG in 2012, both regarding Operation Fast & Furious. *Id.* at 31. He further alleged that DHS OIG separately questioned him about the truthfulness of a statement made by the HSI SAC concerning the extent to which HSI was involved in the operation. *Id.*

¶11 The appellant's OSC complaint contains numerous other allegations suggesting that, even if the activities described above were not protected, he may have been perceived as a whistleblower or as having cooperated with an OIG. *See Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶¶ 9-12

(2016) (recognizing that an appellant may seek corrective action in an IRA appeal based on a claim of reprisal for perceived 5 U.S.C. § 2302(b)(9)(C) activity); *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 6 (2011) (recognizing that an appellant may seek corrective action in an IRA appeal based on a claim of reprisal for perceived 5 U.S.C. § 2302(b)(8) disclosures). For example, the appellant alleged that the HSI SAC repeatedly insinuated that the appellant was the source for a book about Operation Fast & Furious. IAF, Tab 13 at 32. He further alleged that, after the DHS OIG issued its final report on the operation, the HSI SAC specifically told the appellant that he had fallen out of favor because of his comments to the DHS OIG. *Id.*

¶12 According to the appellant, the HSI SAC placed him on administrative duties in June 2013. *Id.* He further alleged that the HSI ASAC told him that this change in duties was "about Fast & Furious." *Id.* at 31. In addition, the appellant asserted that the HSI SAC made himself the approving official for purposes of performance appraisals around the same time, and the appellant's subsequent performance ratings for 2013 and 2014 were tainted. *Id.* at 32, 34-35.

¶13 OSC closed the appellant's complaint in October 2015, just a month after it was filed. *Id.* at 23-41. In doing so, OSC described his allegations as follows:

> You alleged that you suffered reprisals because of your disclosures to the [OIG] of both the Department of Justice and the [DHS] and to various officials employed by DHS, including within its headquarters office. More specifically, your disclosures concerned alleged wrongdoing related to the Fast & Furious operation, including your disclosures that the operation was excessively dangerous to agents and the public, that DHS officials pursued the operation, notwithstanding your disclosures, and that DHS officials attempted to minimize DHS's involvement in the operation. The reprisals you cited were: you were placed on administrative duties, stripped of your law enforcement authority and given lowered performance ratings in 2013 and 2014.

*Id.* at 40. Although OSC closed the appellant's complaint, it did so without determining whether it had any merit. *Id.* at 38. Citing limited resources and a

large caseload, OSC indicated that it would not devote resources to the matter because the allegations were intertwined with the appellant's removal from service, which he had elected to appeal before the Board.[3] *Id.*

¶14 Based on the allegations described above, we find that the appellant met his burden of proving the exhaustion requirement. He provided OSC with a sufficient basis to investigate the following disclosures and activities: his disclosures to senior management regarding case methodologies employed in Operation Fast & Furious, made at the end of 2009; his disclosures to agency management regarding HSI's role in the operation; his responses during an interview with Senator Grassley's office regarding the operation in 2012; his 2011 and 2012 interviews with the DOJ and DHS OIG; and HSI managers' perception that he made protected disclosures or engaged in protected activity regarding Operation Fast & Furious. He also exhausted before OSC the personnel actions of his June 2013 change in duties, 2013 performance appraisal, and 2014 performance appraisal. *Id.* at 26.

<u>The appellant met his remaining jurisdictional burden.</u>

¶15 As previously explained, if an appellant proves that he has exhausted his administrative remedies with OSC, his remaining jurisdictional burden is to nonfrivolously allege that: (1) he made a protected disclosure or engaged in protected activity; and (2) the disclosure or activity was a contributing factor in

---

[3] The appellant filed his Board appeal the same month that he received OSC's letter. IAF, Tab 1. Although the appellant did not wait 120 days after filing his OSC complaint before filing with the Board, his appeal was ripe because OSC had notified him that it was closing his complaint without further action. IAF, Tab 13 at 38. *See* 5 U.S.C. § 1214(a)(3)(B) (explaining that an employee may file a Board appeal 120 days after seeking corrective action from OSC if OSC has not indicated whether it will investigate his complaint); *see Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992) (observing that the purpose of the exhaustion requirement is to provide OSC with an opportunity to take corrective action without Board involvement). In any event, because 120 days have passed since the appellant filed his OSC complaint, his claims are now ripe. *Jundt v. Department of Veterans Affairs*, 113 M.S.P.R. 688, ¶ 7 (2010).

the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Supra* ¶ 5. We find that the appellant has done so.

¶16 At a minimum, in the instant IRA appeal, the appellant nonfrivolously alleged that he cooperated with an OIG investigation, the HSI SAC knew of that activity, and the HSI SAC placed him on administrative duties soon thereafter. IAF, Tab 13 at 14-19; *see Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶¶ 10-11 (2003) (recognizing that an appellant may demonstrate that his disclosure or activity was a contributing factor in a personnel action through the knowledge/timing test). Therefore, the appellant is entitled to a hearing on the merits. *Horton v. Department of Veterans Affairs*, 106 M.S.P.R. 234, ¶ 14 (2007) (recognizing that, in cases involving multiple alleged protected disclosures and multiple alleged personnel actions, if the appellant makes a nonfrivolous allegation that at least one alleged personnel action was taken in retaliation for at least one alleged protected disclosure, he establishes the Board's jurisdiction over his IRA appeal).

Collateral estoppel applies to the question of whether the appellant engaged in protected activity.

¶17 In the appellant's separate removal appeal, the administrative judge found that the appellant made disclosures about the danger and legality of Operation Fast & Furious that were protected by 5 U.S.C. § 2302(b)(8). 0039 ID. She also found that the appellant made disclosures to, and cooperated with, the DOJ and DHS OIG, which was activity protected by section 2302(b)(9)(C).[4] *Id.* at 37-38. We find those conclusions binding for purposes of the instant IRA appeal.

¶18 Collateral estoppel, or "issue preclusion," is appropriate when: (1) an issue is identical to that involved in the prior action; (2) the issue was actually litigated

---

[4] In addition to finding that the appellant engaged in protected activity, she also found that the appellant proved that it was a contributing factor in his removal. 0039 ID at 38-41. She went on to find that the agency met its burden of proving that it would have taken the removal action notwithstanding that protected activity. *Id.* at 41-44.

in the prior action; (3) the determination on the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party or as one whose interests were otherwise fully represented in that action. *Hau v. Department of Homeland Security*, 123 M.S.P.R. 620, ¶ 13 (2016), *aff'd sub nom*. *Bryant v. Merit Systems Protection Board*, 878 F.3d 1320 (Fed. Cir. 2017). In this IRA appeal, the appellant has raised the same alleged disclosures and activities as those raised in his removal appeal, and the question of whether those activities were protected was actually litigated in the removal appeal. *Compare* IAF, Tab 13 at 14-16, *with* 0039 ID at 36-38. The administrative judge's determination on that matter was necessary to the judgment in the removal appeal, and the agency had a full and fair opportunity to litigate the issue. Further, the Board's decision on the appellant's removal appeal is now final. 5 C.F.R. § 1201.113(b) (providing that the initial decision becomes final when the Board issues its decision denying a petition for review). Therefore, in the instant IRA appeal, the agency is collaterally estopped from relitigating whether the appellant's disclosures and activities were protected. *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶¶ 21-22 (2012) (finding that an appellant was collaterally estopped from relitigating whether her disclosure was protected for purposes of an adverse action appeal because that question was previously answered in her IRA appeal). However, the appellant's status as someone perceived to have made protected disclosures or engaged in protected activity was not adjudicated. Therefore, the appellant must meet his burden of proof on this issue on remand.

**ORDER**

¶19     For the reasons discussed above, we remand this case to the field office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                              _/s/ for_____

                                           Jennifer Everling
                                           Acting Clerk of the Board

Washington, D.C.