## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TAMMY NYE,

              Appellant,

       v.

DEPARTMENT OF AGRICULTURE,

              Agency.

DOCKET NUMBER
DC-1221-20-0594-W-1

DATE: February 5, 2025

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Morris E. Fischer</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>Patricia McNamee</u> and <u>Lori A. Ittner</u>, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member**

\* The Board members voted on this decision before January 20, 2025.
\*\* Member Kerner recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

**BACKGROUND**

The appellant is a GS-07 Administrative Office Assistant for the agency. Initial Appeal File (IAF), Tab 8 at 38. On May 5, 2020, the appellant filed the instant IRA appeal, alleging that the agency proposed and effected a 14-day suspension against her in reprisal for making the following disclosures: (1) on July 16, 2019, she informed an agency Special Police Officer that her supervisor had "screamed at her, acted violently and in a threatening manner and took actions including throwing a bunch of papers on the ground and swinging a door open"; (2) on November 12, 2019, in response to the proposed suspension, she informed the deciding official that her supervisor assaulted her and that the agency's processing of whistleblower complaints had a chilling effect on whistleblowers; and (3) her November 12, 2019 response also notified the deciding official that she intended to file a complaint with the Office of Special Counsel (OSC). IAF, Tab 1 at 7.

The administrative judge issued an order informing the appellant of what she must allege to establish jurisdiction over her IRA appeal. IAF, Tab 4. The appellant responded that the agency retaliated against her for making a protected disclosure, that she was a perceived whistleblower, and that she exhausted her administrative remedies before OSC. IAF, Tab 8 at 5-12. The agency argued that the appellant should be precluded from litigating the proposed suspension because the appellant elected to grieve the matter under the negotiated grievance procedure and she failed to provide evidence of exhaustion before OSC. IAF,

Tab 9 at 5-6, 8-11.  During a telephonic status conference, the appellant conceded that the only personnel action at issue was the actual suspension and that the proposed suspension was barred from consideration because she had filed a grievance of that matter prior to the filing of her IRA appeal.  IAF, Tab 15 at 1

After the close of the record on jurisdiction, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction because the appellant did not prove that she exhausted her administrative remedies with OSC.  IAF, Tab 16, Initial Decision (ID).  The administrative judge found that, in response to his jurisdictional order, the appellant did not "describe the precise nature of the whistleblower claims raised in her OSC complaint and/or in oral or written communications" between the OSC attorney and her attorney.  ID at 10.  He further found that, even if such information had been included in the appellant's response, her post hoc characterization of the statements that she made in her OSC complaint would do nothing to advance a jurisdictional finding in the absence of preponderant evidence to support her claims.  ID at 10-11.  The administrative judge noted that the appellant failed to provide a copy of the complaint she filed with OSC or a sworn statement as to the contents of the complaint.  ID at 12.  He also noted that the agency identified the jurisdictional deficiency in its motion to dismiss but that the appellant failed to provide a response or submit any additional evidence on the issue.  ID at 12.

The appellant has filed a petition for review, arguing that she provided preponderant evidence of exhaustion and that she otherwise established Board jurisdiction over her appeal.  Petition for Review (PFR) File, Tab 1 at 5-8.  The agency has filed a response.  PFR File, Tab 3.

## ANALYSIS

To establish Board jurisdiction over an IRA appeal, an appellant must prove that she exhausted her administrative remedies before OSC and make nonfrivolous allegations that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action. *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

Exhaustion

In an IRA appeal, the Board may consider only matters that the appellant first raised before OSC. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). The purpose of the requirement that an appellant exhaust her remedies with OSC prior to filing an IRA appeal is to give OSC "the opportunity to take corrective action before involving the Board in the case." *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). If OSC finds that there is a substantial likelihood that the information it received discloses a violation of the Whistleblower Protection Act, it "shall transmit the information to the head of the agency involved for investigation and report." *Id.*; *see* 5 U.S.C. § 1213(b), (c). These inquiries by OSC and their transmittal to agencies for remedial action are a major component of OSC's work. *Ward*, 981 F.2d at 526.

The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that previously have been raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. Appellants may demonstrate exhaustion through their initial OSC complaint, evidence that they amended the original complaint, including but not

limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and their written responses to OSC referencing the amended allegations. Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.*

In finding that the appellant had not exhausted her remedies with OSC, the administrative judge noted that the appellant failed to provide a sworn statement describing the information that she provided to OSC. ID at 12. The appellant argues on review that the statements in her response to the jurisdictional order were made under penalty of perjury. PFR File, Tab 1 at 6-8. We agree with the appellant. The Board's e-filing form, which the appellant used, specifically asked the appellant whether she declared "under penalty of perjury, that the facts stated in this pleading are true and correct." The appellant replied "Yes." IAF, Tab 8 at 3. Because the appellant answered in the affirmative, the statements in her pleading were made "under penalty of perjury." The issue before the Board is therefore whether the appellant's statements made under penalty of perjury are sufficient to establish exhaustion.

In her response to the jurisdictional order, the appellant asserted that she raised the following three disclosures with OSC:[2] (1) on July 10, 2019, she informed various management officials that, earlier that day, her

---

[2] The appellant's assertions regarding her disclosures in her initial appeal form are not consistent with her description of what she raised with OSC in her response to the jurisdictional order. *Compare* IAF, Tab 1 at 7, *with* IAF, Tab 8 at 4-6. For instance, in her response, she asserted that she told OSC that she disclosed her supervisor's alleged assault to various management officials on July 10, 2019. IAF, Tab 8 at 5. This information does not appear in her initial appeal form. IAF, Tab 1. In addition, in her initial appeal form, the appellant asserts that she informed the deciding official that she was going to file a complaint with OSC. IAF, Tab 1 at 7. This information does not appear in her response as a matter that she exhausted before OSC. IAF, Tab 8. Because her response to the jurisdictional order was an assertion made under penalty of perjury and, unlike her appeal, was specifically an articulation of the matters that she raised before OSC, we are relying on the appellant's jurisdictional response to determine which matters were raised and exhausted before OSC.

supervisor "acted violently and in a threatening manner and took actions including throwing a bunch of papers on the ground and swinging a door open" and spoke to her in a "harsh and demeaning tone" and, on July 16, 2019, she informed an agency Special Police Officer of the same facts; (2) on November 12, 2019, in her response to the proposed suspension, she informed the deciding official that her supervisor threw some papers at her in an intimidating manner, that the conduct could meet the legal definition of an assault, and that the agency's processing of whistleblower complaints had a chilling effect on whistleblowers; and (3) on December 15, 2019, she informed the OSC investigator that her case was the second within 2 days in which the agency proposed to discipline a whistleblower for the manner in which the disclosure was made. IAF, Tab 8 at 4-6, 12, 125, 137.

Although we agree with the administrative judge that the appellant did not prove exhaustion with respect to disclosure (3),[3] ID at 10, we find that her jurisdictional response was sufficient to establish exhaustion as to disclosures (1) and (2). The appellant established that she reported to OSC the content of the disclosures, the individuals to whom they were made, and the personnel action that was allegedly taken in retaliation.[4] This information was sufficient to provide OSC with a basis for an investigation that might have led to corrective action. *See Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (1993); *Ward*, 981 F.2d at 526.

For the reasons explained above, and because OSC did not notify the appellant within 120 days of her complaint that it would seek corrective action on

---

[3] Because the appellant's perceived whistleblower claim stems from disclosure (3), which she did not raise with OSC, we do not consider this theory of the case any further. IAF, Tab 8 at 10; PFR File, Tab 1 at 7.

[4] As previously noted, in her correspondence with OSC, the appellant referenced the agency's decision to sustain the 14-day suspension and asked OSC to include it in her case. IAF, Tab 8 at 148.

her behalf, we find that the appellant exhausted her administrative remedies with respect to disclosures (1) and (2).  IAF, Tab 1 at 7; *see* 5 U.S.C. § 1214(a)(3)(B).

Disclosures

A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8).  *Salerno*, 123 M.S.P.R. 230, ¶ 6.  The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one —whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*

The question of whether the appellant has nonfrivolously alleged protected disclosures that contributed in a personnel action must be determined based on whether she alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020).  The Board may not deny jurisdiction by crediting the agency's interpretation of the evidence as to whether the alleged disclosures fell within the protected categories or whether the disclosures were a contributing factor in an adverse personnel action.  *Id.*

In this case, disclosures (1) and (2) contained allegations that the appellant's supervisor assaulted her and subjected her to "violent intimidation." IAF, Tab 8 at 8. The issue before us is whether a disinterested observer in the appellant's position could reasonably conclude that a supervisor's actions in screaming or speaking in a harsh and demeaning tone, throwing a bunch of

papers either on the ground, as the appellant alleged she disclosed in July 2019, or at her, as she alleged she disclosed in November 2019, and swinging a door open, constituted workplace violence in contravention of the agency's policies. IAF, Tab 8 at 4-5. We need not parse whether the actions described would meet a legal definition of "assault." "Acting violently" in the workplace—whether it consisted of a physical touching or not—would violate the agency's policies on workplace conduct. We therefore find that the appellant made a nonfrivolous allegation that she reasonably believed that her disclosure was protected on the basis that it evidenced a violation of law, rule, or regulation.[5]

With respect to contributing factor, the record contains direct evidence that both disclosures (1) and (2) were a contributing factor in the challenged personnel action. Disclosure (1) was the agency's stated reason for the proposed suspension. IAF, Tab 9 at 47-48. Disclosure (2) was contained in the appellant's response to the notice of proposed suspension and was provided to the deciding official, who considered it in issuing his decision. *Id.* at 26, 43-46. This evidence is more than sufficient to constitute a nonfrivolous allegation of contributing factor.

Because the appellant has made a nonfrivolous allegation that disclosures (1) and (2) were protected, and that they were a contributing factor in her 14-day suspension, and because she exhausted her administrative remedies with respect to these matters, she is entitled to an adjudication of the merits of her claim, including her requested hearing.

---

[5] The appellant also argues that disclosures (1) and (2) evidenced gross mismanagement and an abuse of authority. IAF, Tab 8 at 8-9. Because we have already found that the appellant made a nonfrivolous allegation that she reasonably believed these disclosures to evidence a violation of law, rule, or regulation, we decline to address whether they might also be protected under these other theories. *See Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 13 (2014).

**ORDER**

For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:          _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.