## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LAURANELL BURCH,<br>　　　　　　Appellant, | DOCKET NUMBER<br>DC-1221-14-0894-W-1 |
| 　　　　v. | |
| DEPARTMENT OF HEALTH AND<br>　HUMAN SERVICES,<br>　　　　　　Agency. | DATE: November 16, 2015 |

## THIS ORDER IS NONPRECEDENTIAL[1]

Vanessa Katherine Lucas, Esquire, Raleigh, North Carolina, for
　　the appellant.

Keith A. Eichenholz, Esquire, and Laura VanderLaan, Esquire, Atlanta,
　　Georgia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### REMAND ORDER

¶1　　　The appellant has filed a petition for review of the initial decision, which
dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For
the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Order.

## BACKGROUND

¶2    The appellant was employed as a Staff Scientist with the agency's National Institute of Environmental Health Sciences (NIEHS) in a time-limited, renewable position under 42 U.S.C. § 209(g).  Initial Appeal File (IAF), Tab 1 at 10.  By letter dated May 26, 2013, the agency informed her that her appointment would not be extended beyond June 30, 2014, due to budget constraints.  *Id.*  She filed the instant appeal alleging, in part, that her appointment was not renewed in retaliation for her prior protected disclosures.  *Id.* at 5, 7.

¶3    Regarding her protected disclosures, the appellant alleged the following: (1) since 2007 she made repeated disclosures to management concerning wasteful contractor charges, mismanaged research studies, and underutilized facilities; (2) on April 26, 2013,[2] during a meeting with the NIEHS Scientific Director, she disclosed underutilization of the microarray core facility laboratories and inflated contractor costs related to mouse genotyping; (3) on May 5, 2013, she disclosed inflated contractor charges, Environmental Polymorphism Registry (EPR) study waste, and personnel mismanagement to the Office of Special Counsel (OSC);[3] and (4) in a May 21, 2013 email to the NIEHS Scientific Director, she disclosed the underutilization and mismanagement of microarray core staff and molecular genetics staff, and other waste and mismanagement issues.  IAF, Tab 1 at 13-14, Tab 12 at 18-22, 27.  The appellant further alleged that, in retaliation for these disclosures, the agency took a number of personnel actions against her,

---

[2] The appellant asserts that the meeting occurred on or about April 25, 2013 or April 26, 2013.  IAF, Tab 12 at 21.

[3] The appellant references her OSC disclosure as being filed on May 3, 2013, however, according to OSC's records it was filed on or about May 5, 2013.  IAF, Tab 1 at 22, Tab 12 at 8, 22.

culminating in the nonrenewal of her appointment in 2013.[4]  IAF, Tab 1 at 10, 13-14, 16.

¶4      Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 1 at 3, Tab 14, Initial Decision (ID).[5]  The administrative judge found that the appellant failed to make nonfrivolous allegations of protected disclosures.  ID at 6-9.  Regarding the appellant's repeated disclosures since 2007 of wasteful contractor charges, mismanaged research studies, and underutilized facilities, the administrative judge found that she failed to identify specifically what she disclosed, to whom she disclosed it, and when; thus, she failed to satisfy the requirement that disclosures be detailed and specific.  ID at 7-8.  Regarding the appellant's April 26, 2013 disclosure of inflated contractor costs and the underutilization of the microarray core facility laboratories, the administrative judge found that such a claim, even if true, was not a disclosure of gross mismanagement or a gross waste of funds.  ID at 8-9.  The administrative judge also found that an agency's decision not to renew an appointment under 42 U.S.C. § 209(g) is not an action otherwise appealable to the Board.  ID at 2-3.

¶5      The appellant has filed a petition for review in which she asserts that the administrative judge incorrectly identified her disclosures, improperly failed to address two of her disclosures, and erred in finding that her disclosures were not protected.  Petition for Review (PFR) File, Tab 1 at 12-13, 16-19.  The appellant also asserts that she was denied the opportunity to participate in discovery.  *Id.*

---

[4] The appellant asserts that, in 2012, the agency eliminated her supervisory duties, micromanaged her, and forced her to change offices.  IAF, Tab 12 at 28-29.

[5] The initial decision dismissed the appeal for lack of jurisdiction without reaching the merits; however, the administrative judge improperly stated that "the appellant's request for corrective action is DENIED."  ID at 2; *Hagen v. Department of Transportation*, 103 M.S.P.R. 595, ¶ 10 (2006) (holding that it is improper to deny a request for corrective action on the merits without first determining whether the Board has jurisdiction over the appeal).

at 4 n.1. The agency has filed a response in opposition to the appellant's petition. PFR File, Tab 3. The appellant has filed a reply. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6        The Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before OSC and makes nonfrivolous allegations that: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

The appellant exhausted her administrative remedies before OSC.

¶7        The administrative judge did not make explicit findings on exhaustion, but rather identified two disclosures and two personnel actions referenced in OSC's close-out letter. ID at 5-6. To satisfy the exhaustion requirement, an appellant must inform OSC of the precise ground of her whistleblowing claim, giving OSC a sufficient basis to pursue an investigation that might lead to corrective action. *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). An appellant must prove exhaustion by preponderant evidence. *See Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶¶ 9-10 (2011) (finding that an administrative judge failed to provide proper jurisdictional notice regarding the appellant's burden to prove exhaustion of the alleged disclosures and personnel actions). Exhaustion with OSC is a jurisdictional prerequisite to Board consideration of the substance of the appellant's allegedly protected disclosures, *Ward*, 981 F.2d at 526, and the scope of an IRA appeal is limited to those disclosures raised before OSC, *Sazinski v. Department of Housing & Urban Development*, 73 M.S.P.R. 682, 685 (1997).

¶8 The record reflects that the appellant filed a complaint with OSC and subsequently provided OSC with additional documentation and emails concerning her claims. IAF, Tab 1 at 11-17; *see* IAF, Tab 12 at 19, 24-53. Before OSC she alleged first that she had disclosed waste related to contractor charges, mismanaged research studies, and underutilized facilities to NIEHS leadership since 2007. IAF, Tab 1 at 13. She also alleged that she was subsequently forced to change offices, her supervisory duties were eliminated, and she received an overly controlling job plan in 2012. IAF, Tab 12 at 28-30.

¶9 Second, she alleged that during a meeting on April 26, 2013, she disclosed inflated contractor charges related to mouse genotyping and the underutilization of the microarray core facility to the NIEHS Scientific Director. IAF, Tab 1 at 13. Third, she alleged that she disclosed waste and mismanagement, including underutilization and mismanagement of the microarray core staff and molecular genetics staff via a May 21, 2013 email to the NIEHS Scientific Director and others. *Id.* at 14. Finally, she alleged that, in a May 5, 2013 OSC disclosure complaint, she disclosed inflated contractor charges, EPR study waste, and personnel mismanagement issues resulting in gross waste. *Id.* The appellant contended that the agency threatened her job and then declined to renew her appointment in retaliation for her April and May 2013 disclosures. *Id.* at 13-14; IAF, Tab 12 at 21, 31-32. The record includes a copy of an August 30, 2013 letter from OSC summarizing the appellant's allegations consistent with the above as well as a May 12, 2014 close-out letter from OSC. IAF, Tab 1 at 21-22, 29. Accordingly, we find that the appellant exhausted her administrative remedies as to all four of her alleged disclosures, and as to the alleged personnel actions of changing offices, her job plan, the elimination of her supervisory

duties, the threat to terminate or not renew her appointment, and the nonrenewal of her appointment.[6]

### The appellant nonfrivolously alleged that she made two protected disclosures.

¶10    A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the matter disclosed was one that a reasonable person in the appellant's position would believe evidenced one of the situations specified in 5 U.S.C. § 2302(b)(8).  *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 8 (2013).  At the jurisdictional stage, an appellant is not required to prove that her disclosure is protected under 5 U.S.C. § 2302(b)(8).  *Id.* Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence.  *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶¶ 4-5 (2014).

¶11    The appellant alleges that her disclosures revealed gross mismanagement and gross waste of funds.[7]  IAF, Tab 1 at 13-14.  An employee discloses a gross

[6] An agency's decision not to renew a title 42 appointment is a personnel action under 5 U.S.C. § 2302(a).  *See Belyakov v. Department of Health & Human Services*, 120 M.S.P.R. 326, ¶ 4 (2013).  Further, the threat to take a personnel action, such as a termination or the nonrenewal of an appointment, is a personnel action.  5 U.S.C. § 2302(a)(2)(A)(iii), (v), (vi), (b)(8).  In light of our findings below, we find it unnecessary to reach the issue of whether the appellant's office change, job plan, or the elimination of her supervisory duties were personnel actions because the appellant failed to nonfrivolously allege that the disclosures that preceeded these personnel actions were protected.  IAF, Tab 12 at 28-29; *see Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶¶ 3, 6 (2014) (agreeing with an administrative judge's finding that an appellant could not prove that his disclosure was a contributing factor in his proposed removal because the proposed removal was issued prior to the disclosure).

[7] The appellant also alleged that each of her disclosures evidenced an abuse of authority.  IAF, Tab 1 at 13-14.  Such an abuse occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons.  *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 15 (2014).  There is no evidence in the record that the appellant disclosed any actions that resulted in personal gain.  Although she alleged that the Scientific Director "prioritized the purchase of new carpeting for the floor of the module where his office is located, and also recovered perfectly functional cubicles in cloth of a different color," IAF, Tab 12

waste of funds when she alleges that a more than debatable expenditure is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015).

¶12     Gross mismanagement is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008); *see* S. Rep. No. 112-155, at 8 (2012), *reprinted in* 2012 U.S.C.C.A.N. 589, 596 (citing *Swanson* with approval in a U.S. Senate report on the Whistleblower Enhancement Protection Act of 2012).     The statutory protection for whistleblowers is not a weapon in arguments over policy or a shield for insubordinate conduct; policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8)(A).     5 U.S.C. § 2302(a)(2)(D); *Webb*, 122 M.S.P.R. 248, ¶ 8.

> *The administrative judge properly found that the appellant failed to nonfrivolously allege that her repeated disclosures since 2007 were protected.*

¶13     The appellant's first alleged disclosure concerns her repeated disclosures to management of mismanagement and waste. IAF, Tab 12 at 19-20. We find that the appellant has not identified the specific disclosures she made, to whom, and when, despite multiple opportunities to do so. PFR File, Tab 1 at 12 (containing the appellant's description of her "repeated disclosures since 2007" as "[g]enerally disclosing information to different NIEHS leadership"); IAF, Tab 12 at 18 (naming some individuals to whom disclosures were made, but again failing

---

at 26, she did not allege additional facts from which a reasonable person might conclude that the expenditure was arbitrary and capricious, or that the Scientific Director or other preferred individuals personally benefitted from the expenditures.

to identify what information was specifically conveyed to whom or when it was conveyed).

¶14    On her OSC complaint form, the appellant indicated that sometime in the past she disclosed "to management" that a contractor was charging over $100 or even $1,500 per mouse tail genotype.  IAF, Tab 1 at 13; PFR File, Tab 1 at 17.  She expressed her opinion that $20 would have been an expensive contract price and that the work could have been performed in-house for less than $1 per genotype.  IAF, Tab 1 at 13.  She also asserted that she became aware that internal facilities were underutilized and work for which internal staff was available was shifted to expensive contractors, but failed to state whether she disclosed such information to anyone.  *Id.*  In her declaration submitted below, she similarly contended that she "made repeated disclosures since 2007 reporting waste, fraud and abuse related to inflated contractor cost, [EPR] study mismanagement and waste, and wasteful management practices of core facilities resulting in gross waste" to various management officials.  IAF, Tab 12 at 18.  She submitted a document that she described as containing a history and summary of her disclosures.  *Id.* at 19, 24-34.  In this summary, the appellant provided additional specifics.  *Id.* at 24-28.  For example, she asserted that she reported to her former supervisor that the failure to replace aging equipment led to the loss of study samples.  *Id.* at 26.  However, she provides no context or timeframe from which we can conclude when the disclosure was made or that it should be considered protected.

¶15    The appellant has failed to provide sufficient specifics regarding her alleged repeated disclosures since 2007.  Rather, in her summary of disclosures, she asserts broadly that she "expressed concerns in particular about supervisory issues regarding the EPR, and discussed EPR delays and problems," "reported concerns regarding mismanagement of the EPR study to leadership," and "related concerns about spending priorities."  *Id.*  We agree with the administrative judge that the appellant's conclusory and vague allegations of disclosures of

wrongdoing are insufficient to constitute nonfrivolous allegations of protected disclosures. ID at 7-8; *see Barela v. Merit Systems Protection Board*, 388 F. App'x 965, 967 (Fed. Cir. 2010) (finding an appellant's statements concerning her alleged disclosures inadequate to establish jurisdiction where they were "vague, conclusory, and unsupported by any evidentiary allegations")[8]; *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014) (stating that a disclosure must be specific and detailed, not a vague allegation of wrongdoing).

> *The administrative judge erred in finding that the appellant failed to nonfrivolously allege that her April 26, 2013 disclosure was protected.*

¶16     As to the appellant's second disclosure, she alleged that during a meeting on April 26, 2013, she disclosed to the NIEHS Scientific Director that the microarray core facility was being mismanaged in that staff were underutilized and working inefficiently and personnel "were not working much, if at all, in the laboratories."[9]  IAF, Tab 1 at 13, 26, Tab 12 at 21. We agree with the administrative judge that, even if true, this alleged conduct does not constitute gross mismanagement or a gross waste of funds. ID at 8-9. There is no evidence of what other duties staff performed while not working in the laboratories, or otherwise to suggest that other duties were not a better use of the employee's time and the agency's resources. In any event, the appellant has not alleged that a disinterested person in her position could reasonably believe there was a risk of significant adverse impact on the agency's mission or an expenditure significantly out of proportion to the reasonably anticipated benefit. *See Webb*, 122 M.S.P.R. 248, ¶ 10 n.3; *Swanson*, 110 M.S.P.R. 278, ¶ 11.

---

[8] The Board has held that it may rely on unpublished decisions of the U.S. Court of Appeals for the Federal Circuit if it finds the reasoning persuasive. *Graves v. Department of Veterans Affairs*, 114 M.S.P.R. 245, ¶ 11 n.2 (2010).

[9] She claims that one individual told her that he was working at approximately one-sixth of his prior speed, and that the budget officer advised her that productivity "had been down for years without any reduction in budget, staffing or management." PFR File, Tab 1 at 19; IAF, Tab 12 at 30.

¶17 However, the appellant also asserted that, during this same meeting, she disclosed that the same contractor at issue in her first disclosure was overcharging for mouse genotyping. IAF, Tab 1 at 13. She contended that the contractor was charging $1,500 per mouse when the work could have been performed in-house for less than $1 per mouse and that one investigator contracted out $1 million in a year genotyping a single mouse strain. PFR File, Tab 1 at 5; IAF, Tab 12 at 14, 27, 41. The appellant's allegations regarding overcharging by the contractor are supported by evidence in the record that the agency found her concerns to be "fully justified" and after looking into the allegations, it terminated the use of the contract. IAF, Tab 13 at 19.

¶18 Taken together, we construe the appellant's claims as an allegation that she disclosed that employees were being underutilized and, instead, work which could have been performed in-house was being contracted out at a high cost. We find that a disinterested person in the appellant's position could reasonably believe that that this constituted a gross waste of funds. *See, e.g.*, *Parikh v. Department of Veterans Affairs*, 110 M.S.P.R. 295, ¶ 18 (2008) (finding the appellant made a nonfrivolous allegation that his disclosure that the agency continued to pay for a full staff, despite the fact that the facility had been scheduled to close and had substantially decreased its workload, was a nonfrivolous allegation of a disclosure of a gross waste of funds). Accordingly, we find that the appellant nonfrivolously alleged that her disclosure of this contract expenditure was protected.

> *The administrative judge failed to address two of the appellant's disclosures, one of which she nonfrivolously alleged is protected.*

¶19 We agree with the appellant that the administrative judge erred in failing to address two of her claimed disclosures, instead considering only those disclosures referenced in OSC's close-out letter. PFR File, Tab 1 at 12-13; ID at 6; IAF, Tab 12 at 56. The administrative judge improperly failed to consider the appellant's May 5, 2013 disclosure to OSC or her May 21, 2013 internal disclosure, both of which she identified in her OSC complaint attached to her

initial appeal as well as articulated in her brief on jurisdiction. IAF, Tab 1 at 13-14, Tab 12 at 5-9. Thus, we address the appellant's additional disclosures on review, finding that she made a nonfrivolous allegation that one of these disclosures was protected.

¶20 The appellant alleged that, on May 5, 2013, she disclosed to OSC the agency's "inflated contractor charges, EPR study waste and personnel mismanagement issues resulting in gross waste." IAF, Tab 1 at 14, Tab 12 at 22. While a disclosure to OSC can be protected, *see* 5 U.S.C. § 2302(b)(8)(B), the appellant has not submitted a copy of her disclosure statement and it is not clear from the record what specifically she disclosed. We have previously determined that the appellant's broad contentions that she disclosed inflated contractor charges, EPR study waste, and personnel mismanagement issues resulting in gross waste to be too vague and conclusory to constitute nonfrivolous allegations of protected disclosures. *See supra* ¶¶ 13-15.

¶21 The appellant also specifies that she informed OSC that the agency replaced an experienced investigator managing the EPR study with other inexperienced or less experienced individuals. IAF, Tab 12 at 14, 24-25; PFR File, Tab 1 at 6. She states that this change ultimately resulted in genotyping delays, and required additional "months of effort" by agency employees at "significant salary expenditure." IAF, Tab 12 at 14, 25; PFR File, Tab 1 at 7. We find that the appellant has failed to nonfrivolously allege sufficient facts to establish that a reasonable person could conclude that this management decision created a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission or constituted an expenditure significantly out of proportion to the benefit reasonably expected to accrue.

¶22 Finally, the administrative judge failed to address the appellant's fourth disclosure, an email to NIEHS leadership on May 21, 2013, which the appellant characterizes as a disclosure regarding "underutilization and mismanagement of microarray core staff and molecular genetics staff, and other waste and

mismanagement issues." IAF, Tab 1 at 14. In her email, which is a part of the record below, the appellant asserted that certain managers lacked the technical knowledge and ability to manage the facility and to advise individuals in their work, expressed her disagreement with management's decisions, and urged that she be returned to supervising the molecular genetics staff because of her superior knowledge of the work being performed. IAF, Tab 12 at 32-34. We find that the appellant has failed to nonfrivolously allege sufficient facts to establish that a reasonable person could conclude that such matters constituted a disclosure of a gross waste of funds or gross mismanagement. Rather, the appellant was voicing her disagreement with management's policy decisions. *See* 5 U.S.C. § 2302(a)(2)(D); *Webb*, 122 M.S.P.R. 248, ¶ 8.

¶23        In her email, the appellant also disagreed with a recent decision to renew an equipment servicing contract for $35,000. IAF, Tab 12 at 33. She identified an agency employee who had successfully performed the servicing maintenance on the equipment for years and alleged that this individual could have performed the majority of the contract work in-house for no cost. *Id.* According to the appellant, any work that could not have been performed in-house could have been contracted out "for about 3k in cost." *Id.* We find that the appellant has made a nonfrivolous allegation that a reasonable person in her position would believe that it was a gross waste of funds for the agency to renew the contract rather than perform the work itself at a fraction of the cost. *See Smith v. Department of the Army*, 80 M.S.P.R. 311, ¶¶ 8, 10 (1998) (finding that the appellant made a nonfrivolous allegation that he had disclosed a gross waste of funds by disclosing that the agency spent $15,000 on a fuel management system that would provide no benefit to the Government because the new system provided the same information as the system it replaced); *Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994) (finding the appellant's disclosure regarding an expenditure of $400,000 for an allegedly unnecessary research study was a nonfrivolous allegation of gross waste of funds).

<u>The appellant nonfrivolously alleged that her disclosures were a contributing factor in the agency's decision not to renew her contract.</u>

¶24    The final jurisdictional inquiry is whether the appellant made a nonfrivolous allegation that her April 26, 2013 and May 21, 2013 disclosures were a contributing factor in the agency's alleged threat to her employment and decision not to renew her appointment. The record reflects that the NIEHS Scientific Director, the official who allegedly threatened the appellant's job and made the decision not to renew her appointment, IAF, Tab 1 at 10, knew of the two disclosures because they were made directly to him, IAF, Tab 1 at 13, Tab 12 at 7, 32-33. Further, the appellant alleges that, during a meeting on May 23, 2013, her supervisor informed her that her appointment would not be extended beyond June 30, 2014, and read her a "termination letter" written by the NIEHS Scientific Director. IAF, Tab 12 at 51.

¶25    To make a nonfrivolous allegation that a disclosure was a contributing factor in the agency's decision to take a personnel action, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect a personnel action in any way. *Mason*, 116 M.S.P.R. 135, ¶ 26. One way to establish this criterion is the "knowledge-timing test," under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Mason*, 116 M.S.P.R. 135, ¶ 26. Once the appellant has made a nonfrivolous allegation that the knowledge-timing test has been met, she has met her jurisdictional burden concerning the contributing factor criterion. *Mason*, 116 M.S.P.R. 135, ¶ 26.

¶26 The Board has held that a personnel action that occurred within 1 year of a protected disclosure satisfies the "timing" component of the knowledge-timing test. *See Mudd*, [120 M.S.P.R. 365](#), ¶ 10. Thus, we find that the appellant made a nonfrivolous allegation that she made protected disclosures that contributed to a threat to her employment and the nonrenewal of her appointment. Accordingly, she is entitled to a hearing on the merits of her claim. *See Rusin v. Department of the Treasury*, [92 M.S.P.R. 298](#), ¶ 20 (2002) (explaining that an appellant is entitled to a hearing on the merits if she makes the required nonfrivolous allegations of the elements of an IRA appeal).

The administrative judge did not abuse his discretion concerning discovery.

¶27 Lastly, we find unavailing the appellant's argument that she was denied the opportunity to participate in discovery below. PFR File, Tab 1 at 4. The record reflects that the administrative judge made no rulings on discovery and the appellant did not file a motion to compel. *See Szejner v. Office of Personnel Management*, [99 M.S.P.R. 275](#), ¶ 5 (2005) (determining that an appellant's failure to file a motion to compel below precluded him from raising a discovery dispute for the first time on petition for review), *aff'd*, 167 F. App'x 217 (2006).

## ORDER

¶28 For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:  _____

William D. Spencer
Clerk of the Board

Washington, D.C.