NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3265

BONNY J. RUSSELL,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.


Bonny J. Russell, of Manson, North Carolina, pro se.

Jeffrey A. Gaugher, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent.  With him on the brief were B. Chad Bungard, General Counsel, Joyce G. Friedman, Acting Assistant General Counsel.

Appealed from:  Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3265

BONNY J. RUSSELL,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

Petition for review of the Merit Systems Protection Board in
DC1221070902-W-1 and DC0752080194-I-1.

_____

DECIDED:  December 4, 2008

_____

Before LOURIE, SCHALL, and PROST, Circuit Judges.

PER CURIAM.

## DECISION

Bonny J. Russell petitions for review of the final decision of the Merit Systems Protection Board ("MSPB" or "Board") which dismissed for lack of jurisdiction her appeal alleging involuntary resignation and reprisal for protected whistleblowing.  Russell v. Dep't of Veterans Affairs, Nos. DC-1221-07-0902-W-1, DC-0752-08-0194-I-1 (M.S.P.B. April 10, 2008).[1]  We affirm.

---

[1]    The Board assigned two docket numbers to the appeal for procedural reasons.

DISCUSSION

I.

Ms. Russell was employed by the Department of Veterans Affairs ("DVA" or "the agency") as a staff nurse, in Durham, North Carolina, from February 10, 2002 to July 23, 2003. Ms. Russell states that her supervisor, Ms. McCarty: (1) allowed a nurse to act as charge nurse who did not meet the standards imposed by Ms. McCarty herself; (2) improperly ordered Ms. Russell to prepare a "developmental plan," which none of the other nurses had to prepare; (3) called Ms. Russell "illiterate;" and (4) accused Ms. Russell of taping conversations. Ms. Russell sought mediation. Before the mediation was completed, however, she decided she could no longer work with, or talk to, Ms. McCarty. She therefore asked for leave without pay ("LWOP") while the mediation took place. A senior manager denied the request, however. Thereafter, on July 23, 2003, Ms. Russell resigned from her position.

In due course, Ms. Russell brought an Equal Employment Opportunity ("EEO") complaint, alleging that the agency's actions about which she complained were taken because of her disability (Grave's disease). After finishing the EEO process, Ms. Russell elected to file a complaint in the U.S. District Court for the Eastern District of North Carolina. In the complaint she alleged, among other things, that she was constructively terminated from her position in violation of the Americans with Disabilities Act, 42 U.S.C. § 12188(a) (2000). As of the filing of the briefs in this case, that matter was pending, Russell v. Nicholson, No. 07-CV-00223 (E.D.N.C.).

Ms. Russell also filed a whistleblower complaint with the Office of Special Counsel ("OSC"). On July 12, 2007, OSC ended its inquiry, and informed Ms. Russell

she could appeal to the MSPB. On September 15, 2007, Ms. Russell filed an individual right of action ("IRA") appeal with the Board. At the same time, she alleged that her 2003 resignation was involuntary.

On September 24, 2007, the administrative judge ("AJ") to whom Ms. Russell's appeal was assigned issued an Order to Show Cause, explaining the way a petitioner can establish jurisdiction over an IRA appeal and an involuntary resignation appeal. Ms. Russell responded to the show-cause order, essentially stating the allegations noted above, and indicating that her protected whistleblowing disclosure was a complaint to the Union Representative and agency supervisors about the designation of another nurse as the charge nurse for racially discriminatory reasons. On December 21, 2007, the AJ dismissed Ms. Russell's appeal for lack of jurisdiction. Russell v. Dep't of Veterans Affairs, Nos. DC-1221-07-0902-W-1, DC-0752-08-0194-I-1, slip op. at 1 (Dec. 21, 2007) ("Initial Decision"). The AJ did not hold a jurisdictional hearing, because he concluded that Ms. Russell did not make nonfrivolous allegations establishing an involuntary resignation. Further, because Ms. Russell did not submit her OSC complaint or any other papers she had filed with OSC, the AJ found that she had failed to establish she had exhausted her administrative remedies with respect to her whistleblowing claims. The AJ noted that she was "unable to determine what disclosures or personnel actions were raised at OSC." Initial Decision at 6. Further, the AJ found that Ms. Russell failed to make a non-frivolous allegation that she had made a protected whistleblowing disclosure. The AJ's initial decision became the final decision of the Board on April 10, 2008, after the Board declined to review the decision under 5 C.F.R. 1201.115 (2008). This appeal followed.

II.

We have jurisdiction over Ms. Russell's appeal pursuant to 28 U.S.C. §1295(a)(9) (2000). As stated in 5 U.S.C. § 7703(c), we must affirm a decision of the Board unless we find it to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. See Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998). Whether the Board has jurisdiction over an appeal is a question of law, which we review de novo. Herman v. Dep't of Justice, 193 F.3d 1375, 1378 (Fed. Cir. 1999). The petitioner has the burden of establishing Board jurisdiction, by a preponderance of the evidence. See 5 C.F.R. § 1201.56(a)(2) (2008). We see no error in the decision of the Board in this case. We turn first to the issue of Ms. Russell's alleged involuntary resignation.

III.

Normally, the Board lacks jurisdiction over resignations and retirements, because those acts are presumed voluntary. A petitioner can overcome the presumption of voluntariness and obtain a hearing on jurisdiction, however, by making nonfrivolous allegations that: (1) the resignation or retirement was based on threats of adverse action; (2) the resignation or retirement was based on "alleged misinformation and deception;" or (3) the resignation or retirement was coerced through "working conditions so intolerable" that the employee was forced to leave. Garcia v. Dep't of Homeland Sec., 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc).

The test for coercion requires the employee to show: "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." Shoaf v. Dep't of Agric., 260 F.3d 1336, 1341 (Fed. Cir. 2001) (citations omitted). This three-prong test is objective, and a court must consider the totality of the circumstances to "establish that a reasonable employee confronted with the same circumstances would feel coerced into resigning." Middleton v. Dep't of Def., 185 F.3d 1374, 1379 (Fed. Cir. 1999) (citations omitted). The employee must show he or she was effectively deprived of free choice in the matter and that there was no other option but to involuntarily resign. See Braun v. Dep't of Veterans Affairs, 50 F.3d 1005, 1007 (Fed. Cir. 1995).

On appeal, Ms. Russell argues that she established the agency coerced her into resigning. We agree that Ms. Russell did not make non-frivolous allegations establishing coercion, and therefore was not entitled to a jurisdictional hearing. Ms. Russell focuses mainly on the third prong of the involuntariness test (improper agency acts)—alleging that Ms. McCarty singled her out to create a developmental plan, called her illiterate, and discriminated against her based on race, selecting another individual for charge nurse. Further, Ms. Russell complains that a more senior manager denied her LWOP request pending mediation. Ms. Russell does not attempt to show, however, that the agency imposed the terms of her resignation, or that she had no other realistic alternative but to resign. Indeed, at the time of her resignation, the agency was attempting to mediate the issues between Ms. Russell and Ms. McCarty. In that regard, Ms. Russell could have waited for the resolution of mediation to see if the situation

improved. Further, while the situation between her and Ms. McCarty was not ideal, Ms. Russell has not shown she was effectively deprived of free choice in the matter. Finally, it was not unreasonable for the agency to deny Ms. Russell's LWOP request, considering the mediation could have taken weeks or months.

A "feeling of being unfairly criticized," and a stressful work environment normally do not rise to the level of being "intolerable." Miller v. Dep't of Defense, 85 M.S.P.R. 310, 322 (2000). While it is clear that the work situation with Ms. McCarty was stressful, Ms. Russell has not made out a prima facie case of coercion. In addition, she has not shown that she was deprived of free choice and that she had no option but to resign. Thus, the Board properly dismissed Ms. Russell's involuntary resignation claim for lack of jurisdiction.

IV.

On appeal, Ms. Russell also contends that the Board erred in not allowing her to amend her response to the Order to Show Cause to demonstrate that she exhausted her OSC remedies and that she was making nonfrivolous allegations of protected whistleblowing activity, thereby establishing Board jurisdiction. An IRA appeal under the Whistleblower Protection Act first requires a petitioner to exhaust administrative remedies before the OSC. Further, the petitioner must make nonfrivolous allegations before the Board, (1) that he or she engaged in whistleblowing activity by making a protected disclosure; and (2) that the disclosure contributed to the agency's decision to take or fail to take a personnel action. Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

In this case, Ms. Russell did not provide the AJ with copies of her OSC complaint and other OSC submissions. The AJ's show-cause order specifically provided that Ms. Russell's "<u>submission **must** include copies of her OSC complaint, all other submissions to the OSC, as well as the OSC decision letter providing the appellant with notice of appeal rights to the Board, if not already part of the record</u>." <u>Russell v. Dep't of Veterans Affairs</u>, No. DC-1221-07-0902-W-1, slip op. at 4–5 (M.S.P.B. Sept. 24, 2007). The AJ also indicated that the "failure to comply with this order could result in the dismissal of the appeal." <u>Id.</u> at 5.

Ms. Russell asserts she thought she submitted the documents with her cover sheet, and that the AJ should have let her resubmit. The AJ did allow Ms. Russell to file two separate responses to the show-cause order, and neither contained a copy of the OSC documents. As the AJ stated, "[t]he test of sufficiency of an employee's charges of whistleblowing to OSC is the statement that she makes in the complaint requesting corrective action, not her post hoc characterization of those statements." <u>Initial Decision</u> at 6. Without the OSC record before her, the AJ was not in a position to evaluate Ms. Russell's whistleblowing claim. We therefore decline to disturb the Board's decision that Ms. Russell failed to establish jurisdiction over her IRA appeal.

For the foregoing reasons, the final decision of the Board is affirmed.