**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SUZANNE V. STROHL, | DOCKET NUMBER |
| Appellant, | DC-0752-14-0928-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE: July 26, 2023 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Edward H. Passman, Esquire, Silver Spring, Maryland, for the appellant.

Kevin Greenfield, Lisa Wischkaemper, and Loraine Kovach-Padden, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which affirmed her removal. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The appellant's removal is NOT SUSTAINED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2    The agency employed the appellant as a General Engineer with the Test Resource Management Center (TRMC), a Department of Defense Field Activity. Initial Appeal File (IAF), Tab 5 at 13.  On January 17, 2013, the appellant began an extended absence from the workplace.  *Id.* at 99.  For the next several months, the appellant provided multiple medical notes to her supervisor indicating that she had received medical treatment and would be unable to work for the next month. IAF, Tab 34 at 280-295.  On November 14, 2013, the appellant's supervisor ordered her to either return to duty by November 25, 2013, request a reasonable accommodation, or submit a resignation letter.  IAF, Tab 5 at 51-52.

¶3    On November 20, 2013, the appellant submitted a letter requesting reasonable accommodation in the form of a reassignment and a new supervisor; she claimed that working in a hostile environment had caused her emotional distress and had impacted her ability to return to work.  *Id.* at 32-34.  On December 9, 2013, the agency requested that the appellant provide additional documentation to support her reasonable accommodation request.  *Id.* at 36-40. The appellant provided additional documentation on January 6, 2014.  *Id.* at 41. On March 25, 2014, the agency's Reasonable Accommodation Branch Chief informed the appellant of the agency's decision on her accommodation request. The agency determined that the appellant was a qualified individual with a disability, and it offered her the accommodations of teleworking 2 days per week, changing her schedule to a compressed work schedule, and modifying her direct chain-of-command to minimize her contact with the individuals she alleged to be creating a hostile work environment. *Id.* at 42-44

¶4    On April 1, 2014, the appellant's representative responded to the agency's offer of reasonable accommodation, indicating that the only viable option for accommodating the appellant was a "mutually agreeable reassignment." *Id.* at 45. On April 16, 2014, the agency acknowledged the appellant's refusal of its offered

accommodation and indicated that it did not have a duty to provide the appellant with a new supervisor as a reasonable accommodation. *Id.* at 46.

¶5 On April 23, 2014, the appellant's supervisor proposed the appellant's removal for excessive absenteeism. *Id.* at 47-49. While her proposed removal was pending, the appellant received and accepted an offer of employment from the Department of the Navy. Although the Department of the Navy contacted the agency and requested that it provide a release date for the appellant, the agency did not release the appellant, reassign her, or transfer her. IAF, Tab 46 at 33-34. Instead, the agency removed the appellant effective June 30, 2014. The agency stated in its removal decision that the appellant did not report to work in any capacity after January 17, 2013, and that she failed to provide sufficient medical documentation specifying the extent of her incapacity to return to work or providing an expected return to duty date. IAF, Tab 5 at 14-18.

¶6 On appeal to the Board, the appellant contested the charge and reasonableness of the penalty and alleged that the action was based on reprisal for whistleblowing, disability discrimination, and retaliation for filing equal employment opportunity (EEO) complaints. IAF, Tab 1 at 2-3, Tab 49 at 5-9. After a hearing, the administrative judge affirmed the removal. IAF, Tab 64, Initial Decision (ID) at 2, 29. The administrative judge found that the agency had proven its charge by preponderant evidence in light of the appellant's stipulation that she had been absent from duty based on conditions beyond her control for 17 months. ID at 5. The administrative judge also found that the agency had proven a nexus between the sustained charge and a legitimate Government interest and considered the relevant factors in imposing a reasonable penalty. ID at 5-7.

¶7 The administrative judge further found that the appellant did not prove reprisal for whistleblowing because she did not prove that her disclosures to the Inspector General and other agency officials were protected and did not prove that the one arguably protected disclosure she did make, alleging that the agency

had improperly stored employee performance appraisals and related personally identifiable information on an open share drive accessible to all employees, was a contributing factor in her removal. ID at 7-22. The administrative judge found that the appellant did not prove disability discrimination because she did not show that the agency treated her in a disparate manner compared to any comparator who engaged in similar conduct and did not show that the agency failed to accommodate her conditions. ID at 22-28. Regarding accommodation, the administrative judge found that the agency searched for vacant positions but could identify no position for which the appellant qualified. ID at 25-28. Finally, the administrative judge found that the appellant did not prove retaliation for filing EEO complaints. ID at 29.

¶8    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has responded, and the appellant has replied. PFR File, Tabs 3-4.

## ANALYSIS

### The agency failed to prove its charge.

¶9    To prove a charge of excessive absence, an agency must establish that (1) the employee was absent for compelling reasons beyond her control so that agency approval or disapproval of leave was immaterial because the employee could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless the employee became available for duty on a regular full-time or part-time basis, and (3) the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Gartner v. Department of the Army*, 104 M.S.P.R. 463, ¶ 9 (2007). The Board has held that a removal for excessive absences is not justified when the agency has failed to show that the appellant's absence constituted a burden on the agency or its employees. *Walker v. Department of the Air Force*, 24 M.S.P.R. 44, 45-47 (1984).

¶10    Under the particular circumstances here, we find that the appellant's extended absence did not justify her removal. The agency knew before it removed the appellant that the Department of the Navy had requested that the appellant be released for employment in that agency. IAF, Tab 46 at 33-34. Thus, the appellant's absences had a foreseeable end at the time the agency removed her. *See Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 17 (2008) (finding that a removal based on unavailability for duty due to incapacitation was not warranted when the absence at issue had a foreseeable end at the time of the removal). We therefore find that the agency failed to prove its charge and the appellant's removal is not sustained.[2]

The appellant proved that the agency discriminated against her based on disability.

¶11    The appellant raised disability discrimination based on both disparate treatment and a failure to provide reasonable accommodation. As to the disparate treatment claim, at the time that the administrative judge issued the initial decision in this case, the Board's case law provided that the framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), was inapplicable to Board proceedings. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 46 (2015). However, while this case was pending on petition for review, the Board overruled *Savage* in that regard and held that the *McDonnell Douglas* framework is one of several methods by which an appellant may prove a claim of disparate treatment discrimination in a Board appeal. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25, 42. We therefore analyze the appellant's disparate treatment disability discrimination claim pursuant to *Pridgen*.

---

[2] Although we need not reach the issue of nexus given our finding as to the charge, we note that removing an employee for nondisciplinary reasons when another Federal agency is seeking to hire that employee does not appear to promote the efficiency of the service. *See Yee v. Department of the Navy*, 121 M.S.P.R. 686, ¶¶ 10-15 (2014) (defining "service" in the phrase "efficiency of the service" to include the civil service as a whole, not just the employing agency).

¶12        In *McDonnell Douglas*, 411 U.S. at 802-04, the U.S. Supreme Court held that to establish a claim of prohibited employment discrimination, the employee first must establish a prima facie case; the burden of going forward then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination. Under this framework, an employee may establish a prima facie case of prohibited discrimination by introducing evidence to show (1) that she is a member of a protected group; (2) that she suffered an appealable adverse employment action; and (3) that the unfavorable action gives rise to the inference of discrimination. *Hodges v. Department of Justice*, 121 M.S.P.R. 337, ¶ 19 (2014) (citing *McDonnell Douglas*, 411 U.S. at 796, 802 (stating that an individual alleging nonselection based on race may establish his prima facie case by "showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications")).

¶13        Here, the appellant has established a prima facie case. Specifically, it is undisputed that she was disabled and was removed by the agency, thereby satisfying the first two elements. Regarding the third element, the agency chose to remove the appellant despite knowing that another agency was seeking a release that would enable the appellant to transfer into another position. A delayed or denied release date can be the subject of a discrimination or retaliation complaint. *See, e.g.*, *Montgomery v. Department of Transportation*, EEOC Appeal No. 0120064430, 2008 WL 1744021, *1 (Apr. 11, 2008) (finding that the postponement of the appellant's release date triggered the time limit for filing a discrimination complaint); *Black v. Department of Transportation*, EEOC Appeal No. 01A45917, 2005 WL 2137500, *1-*3 (Aug. 24, 2005) (concluding that delaying a complainant's release from one position to another within the agency

was pretextual); *Thompson v. Department of the Air Force*, EEOC Appeal No. 01900934, 1990 WL 711389, *4-*5, *7-*9 (July 20, 1990) (finding that an agency retaliated against an employee who was awaiting release to a different position within the agency by suspending her and then informing the selecting official of her suspension, which caused him to withdraw the job offer). In addition, the agency did not reassign the appellant to a vacant position, even though that is a form of reasonable accommodation under the Equal Employment Opportunity Commission's regulations. 29 C.F.R. § 1230.2(o)(2)(ii). Under the circumstances here, we find that the agency's decision to remove the appellant without exploring the possibility of a release or reassigning her gives rise to an inference of discrimination.

¶14     Once the appellant has established a prima facie case, the burden shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Here, the Director of Administration testified that she would have been happy to help with a reassignment for the appellant, but that the agency had no vacant positions and was further being subjected to downsizing due to Congressional budgetary constraints, limiting the agency's ability to create any new positions. Hearing Transcript, May 23, 2016 at 215-18. This meets the agency's burden of production under *Burdine.*

¶15     Turning to the pretext analysis, a complainant can show pretext in two ways, "either . . . by persuading the court that a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The credibility of the explanation can be called into question if it is unduly vague, appears to be an after-the-fact explanation, or appears otherwise fabricated (e.g., the explanation shifts, or inconsistent reasons are given). *Pamila R. v. United States Postal Service,* EEOC Appeal No. 0120160810, *4 (2018). Here, if budgetary constraints were the reason the agency could not reassign the appellant internally,

there would be no reason for the agency to refuse to provide the release to the Department of the Navy.  Moreover, the Director of Administration's testimony regarding reassignment is inconsistent with the record.  Specifically, in response to the appellant's request for a reassignment as an accommodation, the agency rejected the idea and cut off the interactive process without conducting a search for vacant positions.  IAF, Tab 5 at 48.  The agency's failure to provide the appellant with a release under the circumstances and its shifting explanations indicate that its proffered excuse was pretext for disability discrimination.  Accordingly, we find that the appellant proved that her disability was a but-for cause of her removal and she is entitled to full relief for her claim of disability discrimination.  *See Pridgen*, 2022 MSPB 31, ¶¶ 24 n.5, 40, 42.[3]

The appellant failed to prove retaliation for prior EEO activity.

¶16     Regarding the appellant's claim of retaliation for filing prior EEO complaints, the administrative judge found that the appellant presented no evidence in support of that claim and therefore failed to meet her burden of proof.  We address that claim here to apply the correct legal standard.

¶17     The appellant alleged in her prior EEO complaint that the agency had discriminated against her based on sex and disability.  IAF, Tab 5 at 12.  Thus, she engaged in activity protected under both Title VII and the Rehabilitation Act of 1973 (the Rehabilitation Act).  The Board in *Pridgen* held that retaliation claims under Title VII and the Rehabilitation Act are subject to different causation standards.  Specifically, the Board held that claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims, which requires proof that a

---

[3] As to the appellant's claim that she was denied a reasonable accommodation for her disability, we question whether the agency properly engaged in the interactive process.  However, we find it unnecessary to resolve that question under the unique circumstances here because it appears that any relief for that claim would overlap with the appellant's relief for her proven status-based disability discrimination claim.

prohibited consideration was a motivating factor in the agency's decision. *Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 30. However, the Board held that an appellant alleging retaliation for activity protected under the Rehabilitation Act must prove that such retaliation was a "but-for" cause of the agency's action to be entitled to any relief. *Id.*, ¶¶ 44-46. We have applied the applicable standards under *Pridgen* and find no reason to disturb the administrative judge's determination that the appellant failed to prove her claim of retaliation for prior EEO activity under either standard.

The appellant has not shown that the administrative judge erred in analyzing her whistleblower reprisal claim.[4]

¶18    The appellant contends on review that the administrative judge applied the wrong standard when he found that a reasonable person "would" not have believed that the appellant's disclosures violated a law, rule, or regulation or met any of the other criteria set forth at 5 U.S.C. § 2302(b)(8). PFR File, Tab 1 at 19, 26. The appellant asserts that the administrative judge should have instead determined whether a reasonable person with the same information "could" have reached that conclusion. *Id.*

¶19    An employee who has the authority to take any personnel action shall not, with respect to such authority, take such a personnel action because of any disclosure of information that the employee "reasonably believes" evidences any violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8). Citing to the court's decision in *Lachance v. White*, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999), the administrative judge correctly explained that, in determining whether an employee's belief that a disclosure was protected was reasonable, the test is whether "a disinterested

---

[4] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude" that the information disclosed evidences one of these categories of wrongdoing. ID at 10. Nevertheless, the administrative judge proceeded to find, regarding several of the appellant's disclosures, that a disinterested observer "would" not reasonably conclude that the disclosures were protected. ID at 10-17, 19-21.[5]

¶20 We acknowledge that the word "could," which is the past tense of the word "can," generally denotes possibility, while the word "would," which is the past tense of the word "will," generally implies probability. *See* Merriam-Webster's Collegiate Dictionary 164, 263, 1361 (10th ed. 2002). We also note, however, that our reviewing court and the Board have occasionally used the term "would" in connection with the reasonable belief test. *See Herman v. Department of Justice*, 193 F.3d 1375, 1379-80 (Fed. Cir. 1999) (determining that "a reasonable person would not believe" the appellant's disclosure evidenced a violation of an agency directive); *Sinko v. Department of Agriculture*, 102 M.S.P.R. 116, ¶ 17 (2006) (stating that an appellant failed to nonfrivolously allege that a reasonable person "would believe" that his disclosures evidenced gross mismanagement or a gross waste of funds). In any event, we find that, for the reasons explained by the administrative judge, ID at 10-22, which included his determination that the essential facts necessary for a reasonable person to arrive at such conclusions were missing in several instances, the appellant did not show that a disinterested observer reasonably could have concluded that these disclosures evidenced a violation of law, rule, or regulation, or any of the other circumstances set forth at 5 U.S.C. § 2302(b)(8).

---

[5] The administrative judge did find, after addressing several November 18, 2011 disclosures, that a disinterested observer, "armed with such speculative facts" and "armed with these skeletal facts," "could" not reasonably conclude that the disclosure evidenced a conflict of interest or abuse of power. ID at 8, 10-11, 13.

¶21     The appellant also contends that the administrative judge "read the transcript extremely narrowly, selecting single sentences out of pages of detail and then finding that Appellant did not have enough evidence to reasonably believe her allegations disclosed subject matter protected by §2302(b)(8)." PFR File, Tab 1 at 26 (spacing as in original).  In this regard, the appellant reasserts the general nature of her alleged protected disclosures, contends that the allegations underlying those disclosures were specific, detailed, and based on her personal observations or those of an individual she trusted, and claims that a reasonable person with that information could conclude that the allegations disclosed a violation of law, rule, or regulation, or a "waste of money."  *Id.* at 21-26.  The appellant does not, however, identify the testimony that the administrative judge allegedly read too narrowly, nor does she identify any testimony or evidence contradicting the findings made by the administrative judge.  A petition for review must be supported by specific references to the record.  5 C.F.R. § 1201.114(b).  The appellant has not done so regarding this argument.  Thus, she has shown no error by the administrative judge.

¶22     Finally, the appellant asserts that, if the Board finds that her disclosures are protected, it should also find that they were a proximate cause of her disability and absence and, thus, a contributing factor in her removal.  PFR File, Tab 1 at 26-27.  The appellant has not, however, shown that the administrative judge erred when he found that the disclosures were not protected.  Therefore, we need not address whether those disclosures were a contributing factor in the appellant's removal.  *See Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015) (recognizing that, in asserting a whistleblower reprisal affirmative defense, an appellant must prove by preponderant evidence both that she made a protected disclosure and that her disclosure was a contributing factor in the agency's personnel action); *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 13 (2015) (declining to address an appellant's arguments regarding the contributing factor criterion at the jurisdictional stage of an individual right of action appeal when he

failed to nonfrivolously alleged that he made a protected disclosure), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

**ORDER**

¶23      We ORDER the agency to cancel the appellant's removal and to restore her effective June 30, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶24      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶25      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶26      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶27    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a.  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204.  If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF

THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: _____/s/ for_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.